IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHANNON DAVES, *et al.*, | § | |
| Plaintiffs, | § § § | |
| v. | § § | Civil Action No. 3:18-CV-0154-N |
| DALLAS COUNTY, TEXAS, *et al.*, | § § § | |
| Defendants. | § | |

# MEMORANDUM OPINION AND ORDER

This Order addresses Plaintiffs Shannon Daves, Shakena Walston, Erriyah Banks, Destinee Tovar, Petroba Michieko, and James Thompson's motion for preliminary injunction [3]. For the reasons set forth below, the Court grants Plaintiffs' motion and issues the Preliminary Injunction filed contemporaneously with this Order. The Court has also granted Plaintiffs' motion for class certification [2] in a separate order. The preliminary injunction shall apply to the class the Court certified in that Order.

## I. ORIGINS OF THE DISPUTE

This case is about Dallas County's pretrial detention system. Plaintiffs are recent arrestees in custody at the Dallas County Jail. Plaintiffs allege that the County, the Sheriff, the Magistrates, the Felony Judges, and the Misdemeanor Judges employ an unconstitutional "system of wealth-based detention by imposing and enforcing secured money bail without an inquiry into and findings concerning the arrestee's present ability to pay." Compl. ¶ 8 [1].

Plaintiffs seek both injunctive and declaratory relief against the County's procedures. Now before the Court is Plaintiffs' motion for preliminary injunction.

The disposition of this case is greatly simplified by the Fifth Circuit's recent decision in *ODonnell v. Harris Cty*, 892 F.3d 147 (5th Cir. 2018) (on rehearing) (*ODonnell I*). *See also ODonnell v. Goodheart*, 900 F.3d 220 (5th Cir. 2018) (*ODonnell II*) (reversing aspects of the injunction entered on remand from *ODonnell I*). This case differs from *ODonnell* in two respects: (1) it includes felony arrestees; and (2) Plaintiffs raise a substantive due process argument not raised in *ODonnell*. The Court holds that neither of those differences is material and issues a preliminary injunction in the form suggested in *ODonnell I*.

## II. Factual Findings

The Court makes the following findings.

1.0. The post-arrest system in Dallas County has four main actors.

    1.1. First are the Dallas County Criminal Court at Law Judges ("Misdemeanor Judges").[1]

    1.2. Second are the Dallas County Criminal District Court Judges ("Felony Judges").[2] The Felony Judges hire and fire Magistrate Judges.

---

[1] These are Defendants Dan Patterson, Julia Hayes, Doug Skemp, Nancy C. Mulder, Lisa Green, Angela King, Elizabeth Crowder, Tina Yoo Clinton, Peggy Hoffman, Roberto Canas, Jr., and Shequitta Kelly.

[2] These are Defendants Ernest White, Hector Garza, Teresa Hawthorne, Tammy Kemp, Jennifer Bennett, Amber Givens-Davis, Livia Liu Francis, Stephanie Mitchell, Brandon Birmingham, Tracy Holmes, Robert Burns, Nancy Kennedy, Gracie Lewis, Dominique Collins, Carter Thompson, Jeanine Howard, and Stephanie Fargo.

1.3. Third are the Magistrate Judges.[3] Magistrate Judges report to the Felony Judges, and are subject to the policies and guidance the Felony Judges promulgate. Magistrate Judges also routinely follow the guidance and policies Misdemeanor Judges distribute, but they do not report to Misdemeanor Judges. Magistrate Judges are responsible for determining the conditions of release for arrestees in Dallas County.

1.4. Fourth is the Dallas County Sheriff, Defendant Marian Brown. The Sheriff is responsible for enforcing the Magistrate Judges' bail determinations.

2.0. The court finds that the County's post-arrest system operates in the following way.

2.1. The process begins with an arrest. This arrest can be made by a number of agencies, including the Dallas County Sheriff's Office, and the City of Dallas Police Department.

2.2. If either of these two agencies make the arrest, the arrestee will be taken directly to the Dallas County Jail. If another agency makes the arrest, the arrestee is taken to the jail the arresting authority operates.

2.3. The arrestee is then scheduled for a hearing that is locally referred to as an arraignment. Arraignments are held in front of Magistrate Judges, either in person or by video-link.

---

[3] These are Defendants Terrie McVea, Lisa Bronchetti, Steven Autry, Anthony Randall, Janet Lusk, and Hal Turley.

2.4. At arraignments, Magistrate Judges inform the arrestee of the offense charged and set the condition required for release.

2.5. In Texas, release is generally contingent on one of two types of bonds. The first is an unsecured, or personal release bond. These require the arrestee to make a payment only if he or she fails to appear. The second is a secured bond. These require an arrestee to make an up-front payment in order to avoid detention.

2.6. In February 2018, the Felony Judges granted Magistrate Judges the authority to grant personal release, or unsecured bonds.

2.7. Video evidence taken in July 2018, however, reveals that Magistrate Judges routinely deny personal release bonds. The vast majority of arrestees are instead given secured financial conditions of release.

2.8. The Misdemeanor Judges have given Magistrate Judges a generally applicable schedule of secured financial conditions that apply to every misdemeanor arrestee in the County.

2.9. The Felony Judges have given Magistrate Judges a similar schedule for felony arrestees.

2.10. These schedules operate like a menu, associating various "prices" for release with different types of crimes and arrestees.

2.11. Magistrate Judges routinely treat these schedules as binding when determining bail. The schedules are the policy of Dallas County.

2.12. Video evidence taken in July 2018 reveals that arraignments typically last under 30 seconds, and consist of the Magistrate Judge: (1) calling the arrestee by name, (2) informing the arrestee of the crime he or she is accused of and the bail associated with that crime, and (3) asking the arrestee if he or she is a United States citizen.

2.13. Prior to February 2018, Magistrate Judges did not take an arrestee's ability to pay into consideration when setting bail. In February 2018, Magistrate Judges were instructed to consider a financial affidavit that arrestees have the opportunity to fill out prior to arraignment. The form asks arrestees to indicate the maximum amount of secured bail they could afford.

2.14. Yet, Magistrate Judges still routinely treat the schedules as binding, and make no adjustment in light of an arrestee's inability to pay. The post-February 2018 affidavits have made no material difference in the Magistrate Judges' practices. Routine reliance on the schedules is still the policy of Dallas County.

2.15. Once an arrestee knows the amount required for release, he or she can pay the sum and obtain release.

2.16. An arrestee who cannot access money through a bank account can call a family member or friend, or contact a commercial bonding company. If he or she still cannot access the required funds, he or she is kept in jail, assigned to a housing unit, and confined in a cell until his or her first appearance.

2.17. Misdemeanor arrestees typically wait between four and ten days for their first appearance before a misdemeanor judge. Felony arrestees who waive indictment typically wait two weeks for their first appearance before a felony judge. Felony arrestees who do not waive indictment typically wait two to three months.

2.18. Most misdemeanor and low level felony arrestees who are detained at the time of their first appearance elect to plead guilty. Doing so most often results in sentences of time served and immediate release.

2.19. If arrestees do not plead guilty, they will be detained until their next appearance.

2.20. Judges decline to hold an on-the-record hearing regarding bond reduction or pretrial release at the first appearance. In order to obtain such a hearing, a defense attorney must file a written motion for bond reduction. The hearing is usually scheduled for a week or more after the motion is filed.

3.0. The Court thus finds that the County's post-arrest system automatically detains those who cannot afford the secured bond amounts recommended by the schedules. This detention can last for days, weeks, and, in some cases, even months. This detention results solely because an individual cannot afford the secured condition of release.

4.0. The County's policy of routinely relying on the schedules thus causes the pretrial detention of indigent arrestees. The February 2018 changes that the County

implemented had minimal effect; the policy is still firmly in place, and the resulting harms are ongoing.

5.0. Pretrial detention has severe consequences beyond deprivation of liberty. Some examples include: loss of employment, loss of education, loss of housing and shelter, deprivation of medical treatment, inability to care for children and dependents, and exposure to violent conditions and infectious diseases in overcrowded jails.

### III. THE FELONY AND MISDEMEANOR JUDGES ARE PROPER DEFENDANTS UNDER SECTION 1983; THE SHERIFF IS NOT

Plaintiffs sue Dallas County under 42 U.S.C. §1983. To succeed, Plaintiffs must first "'show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right.'" *ODonnell v. Harris Cty.*, 251 F. Supp. 3d. 1052, 1148 (S.D. Tex, 2018) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009)).[4]

These requirements are met as to the Felony and Misdemeanor Judges. When the Felony and Misdemeanor Judges promulgated the bail schedules, they were not acting in their judicial capacity, but rather in "their capacity as county policymakers." *ODonnell I*, 892 F.3d at 156. While the schedules may not appear to be "official policy" in the traditional sense of the term, the Magistrate Judges' routine reliance on the schedules was clearly a practice "so common and well settled as to constitute a custom that fairly represents municipal policy." *ODonnell I,* 892 F.3d at 155 (finding "official policy" to "include . . .

---

[4]The governmental entity here is a county, of course, rather than a municipality.

practices that are 'so common and well settled as to constitute a custom that fairly represents municipal policy'") (quoting *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)). That reliance, furthermore, is the factual foundation upon which the Plaintiffs' constitutional theories rest. The administration of the schedules was thus, in other words, an official policy promulgated by a municipal policymaker that became the driving force behind an alleged constitutional violation. As such, the Court finds the judges are proper defendants under section 1983.

Because the Felony and Misdemeanor Judges are acting as policymakers for the County, in these circumstances, their actions can subject the County to liability under section 1983. Thus, the County is also a proper defendant. Because the County is a proper defendant, any injunction against the County would reach the Magistrate Judges, who are acting on behalf of the County. The Court, therefore, need not consider whether the Magistrate Judges are themselves proper defendants.[5]

The Sheriff, however, is not a proper defendant under section 1983. The Sheriff does not have policy making authority, but rather "is legally obliged to execute all lawful process" and follow the instructions of the magistrate. *ODonnell I*, 892 F.3d at 156. She, thus, cannot act as a policymaker like the Felony and Misdemeanor Judges. Accordingly, the Court holds that the Sheriff is not a proper defendant under section 1983.

---

[5]The Magistrate Judges here are analogous to the Hearing Officers in *ODonnell I*. The Fifth Circuit affirmed the injunction against the Hearing Officers, *ODonnell I*, 892 F.3d at 165, but did not specifically address whether they were proper defendants.

## IV. THE COURT GRANTS PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION

To obtain a preliminary injunction, Plaintiffs must establish:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). The Court holds that Plaintiffs have satisfied each of these elements.

### A. Plaintiffs Have Shown a Likelihood of Success on the Merits

***1. Equal Protection Claim.***[6] — First, Plaintiffs have shown it is substantially likely that Dallas County's current post-arrest procedures violate their equal protection rights. The Fifth Circuit in *ODonnell I* concluded that the equal protection issue essentially amounted to the following:

> [T]ake two misdemeanor arrestees who are identical in every way–same charge, same criminal backgrounds, same circumstances, etc.–except that one is wealthy and one is indigent. Applying the County's current custom and practice, with their lack of individualized assessment and mechanical application of the secured bail schedule, both arrestees would almost certainly receive identical secured bail amounts. One arrestee is able to post bond, and the other is not. As a result, the wealthy arrestee is less likely to plead guilty, more likely to receive a shorter sentence or be acquitted, and less likely to bear the social costs of incarceration. The poor arrestee, by contrast, must bear the brunt of all of these, simply because he has less money than his wealthy counterpart.

---

[6]The Court is aware that in the intersection of indigency and the criminal justice system, the Supreme Court has observed that "[d]ue process and equal protection principles converge in the Court's analysis . . . ." *Bearden v. Georgia*, 461 U.S. 660, 665 (1983). This Memorandum follows *ODonnell I* in discussing the two theories separately.

*ODonnell I*, 892 F.3d at 163. That Plaintiffs' case involves felony and misdemeanor arrestees does not change the analysis.[7] The fact remains that two arrestees similar in every way except their ability to pay will have vastly different pretrial outcomes as a result of the Magistrate Judges' mechanical application of the bond schedules. Wealthy arrestees — regardless of the crime they are accused of — who are offered secured bail can pay the requested amount and leave. Indigent arrestees in the same position cannot. Indeed, the equal protection issue that plagued *ODonnell I* is not cured by adding more arrestees to the mix. The Court thus finds that Plaintiffs have a substantial likelihood of succeeding on their equal protection claim.

    *2. Procedural Due Process Claim.* — The Court reaches a similar conclusion with respect to Plaintiffs' procedural due process arguments. To succeed on a procedural due process theory, Plaintiffs must show: (1) that there exists a liberty or property right that has been infringed by the State, and (2) that the procedures protecting that right were constitutionally deficient." *ODonnell I*, 892 F.3d at 157 (citing *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010)).

    Plaintiffs first identify a fundamental right against wealth based detention. Pls.' Br. in Supp. of the Named Pls.' Mot. for Class-Wide Prelim. Inj., 20-24 [4-3] ("Pls.' Br."). Presented with an almost identical slate of facts, the Fifth Circuit in *ODonnell* found this

---

    [7]Although Dallas County argues that this Court should afford lesser relief than *ODonnell I* allowed because of the presence of felony defendants, this Court sees no reason the procedural due process or equal protection analysis would differ if a defendant were charged with a felony.

right to be too broad, and instead chose to recognize only the right to be "bailable upon sufficient sureties." *ODonnell I*, 892 F.3d at 158. The Court finds the same reasoning applies here, and thus recognizes only the right to be bailable upon sufficient sureties.

The County's existing procedures surrounding this right are constitutionally deficient. As stated above, the decision to impose secured bail is essentially automatic. Even after the financial affidavit was introduced, decisions are still made in an overtly mechanical way that routinely detains indigent arrestees because they cannot afford bail. That this case involves felony arrestees, again, does not change the analysis.[8] The Fifth Circuit's balancing exercise further reveals that there are procedures the County can implement that would better protect the right, without causing an untenable administrative burden. *ODonnell I*, 892 F.3d at 160-1. The Plaintiffs have thus shown there is a substantial likelihood that the County's post-arrest procedures violate procedural due process.

   **3. *Substantive Due Process Claim.*** — Some words are owed, however, to Plaintiffs' alleged pretrial liberty right. Pls.' Br., 24-6 [4-3]. Plaintiffs contend that there is a substantive due process right to pretrial liberty that requires more relief than the right to be bailable upon sufficient sureties. *Id.* Specifically, they seek to require a substantive finding by the Magistrate Judges that no other alternative to secured release would serve the State's interest before detaining an individual before trial. The Court disagrees for two reasons.

---

[8]As noted above, this is in large part because the procedures for setting bail are the same regardless of the crime of which the arrestee is accused. The Court acknowledges, however, that the type of crime may impact the risk analysis when deciding the amount of bail or other security required.

First, while the plaintiffs in *ODonnell* did not raise this argument, the broader right to pretrial liberty was still a factor in *ODonnell I's* balancing exercise. *ODonnell I*, 892 F.3d at 159 (noting that the "the right to pretrial liberty of those accused" was "particularly important"). With this right in full view, the Fifth Circuit nonetheless found that the procedures required in the model injunction struck the proper constitutional balance. This Court will follow their guidance.

Even if *ODonnell I* lacked this guidance, however, the Court would reach the same result. Plaintiffs chief support for their argument is *United States v. Salerno,* 481 U.S. 739 (1987). There, the Supreme Court upheld procedures in the Bail Reform Act that required detention of individuals "charged with certain serious felonies [only] if the Government demonstrates by clear and convincing evidence after an adversary hearing that no release conditions 'will reasonably assure . . . the safety of any other person and the community.'" *Salerno,* 481 U.S. at 739 (quoting 18 U.S.C. §3142(e)).

There is no denying that *Salerno* firmly emphasizes the importance of the right to pretrial liberty. *Id.* at 750. But that alone does not establish that the right to pretrial liberty can be stretched by substantive due process to require the finding Plaintiffs seek. There is a difference between requiring that arrestees be granted *some* condition of release absent a showing that they are a flight risk, and requiring that arrestees be granted a condition of release they can afford absent a showing that no other condition of release is feasible. The Court accepts that due process requires the former, but declines to extend it to cover the latter.

This is in large part because the law requires "that if a constitutional claim is covered by a specific constitutional provision, such as the . . . Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Walker v. City of Calhoun, GA*, 2018 WL 400052, at *7 (11th Cir. Aug. 22, 2018) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.9 (1997)). The Eighth Amendment states that "[e]xcessive bail shall not be required." U.S. CONST. Amend. VIII. Plaintiffs do not raise an Eighth Amendment claim and do not contend they can show a violation under Eighth Amendment jurisprudence. *See, e.g. Stack v. Boyle*, 342 U.S. 1 (1951) (holding that "excessive" bail under the Eighth Amendment is bail set at a higher figure than the amount reasonably calculated to assure the accused will stand trial).

The moment that Plaintiffs transition from advocating for reformed procedures to advocating for the abolition of or lessening of monetary bail, they must traverse through the Eighth Amendment. Requiring courts to use detention only as a last resort does just that. The Court declines to use substantive due process as an end-around of the Eighth Amendment. Plaintiffs have thus not shown a likelihood of success on their substantive due process arguments.

### B. Plaintiffs Have Shown a Risk of Irreparable Harm

Failure to grant an injunction would risk irreparable harm. The status quo deprives the Plaintiff class of an established liberty interest without procedural due process and in violation of their equal protection rights. The record clearly indicates that this constitutional deprivation is ongoing and routine. The injury also extends well beyond the initial

MEMORANDUM OPINION AND ORDER – PAGE 13

deprivation of liberty. Those detained lose their jobs, their homes, and much more. Without an injunction, these injuries will linger unchecked and untreated. Indeed, these were the exact facts that led the district court in *ODonnell* to find a risk of irreparable harm. 251 F. Supp. 3d at 1157-8. This Court agrees.

### *C. The Balance of Harms and the Public Interest Favor an Injunction*

The balance of harms also tilts heavily in favor of an injunction. Defendants fail to produce credible evidence of harm that competes with the severity of the harm to the Plaintiff class's liberty interest at stake. Much of the evidence they lean on to support their allegations of increased failed appearances, heightened risks to the public, and exorbitant costs is the same that was presented to the district court in *ODonnell*. *See* Dallas County Defs.' Resp. to Pls. Mot. for Prelim. Inj., 14-17 [32] ("Defs.' Resp."). The court there found that "the reliable, credible evidence in the record" showed that secured financial conditions fare no better than unsecured or non-financial conditions at assuring appearance or law-abiding behavior, and that community supervision was actually more cost effective than pretrial detention.[9] *ODonnell*, 251 F. Supp. at 1131-2, 1145. This Court agrees, and none of the additional evidence Defendants produce compels a different finding.

As to the public interest, "it is always in the public interest to prevent the violation of a party's constitutional rights." *ODonnell,* 251 F. Supp. 3d at 1159 (quoting *Simms v.*

---

[9]In spite of the evidence presented on costs, nothing in the injunction the Court is granting today *requires* community supervision. Today's injunction follows the guidance of the Fifth Circuit, mandating only additional procedures at the moment bail is set. This is examined in more detail in the next section.

*District of Columbia*, 872 F. Supp. 2d 90, 105 (D.D.C. 2012)). The County's post-arrest system routinely violates indigent arrestees' constitutional rights. As such, the Court finds an injunction to be in line with the public interest.

## V. RELIEF

Both parties request the Court to stray from the Fifth Circuit's model injunction in one way or another. Plaintiffs urge the Court to require a substantive finding that detention is strictly necessary before imposing it on an indigent arrestee, and to prohibit any amount of wealth based detention. *See* Pls. Reply to County Defs.' Resp. in Opp'n. to Pls.' Mot. For Prelim. Inj., 10-14 [58]. Defendants argue less relief — if any — should be granted because this case includes felony arrestees. Defs.' Resp., 16, 22 [32]. The Court respectfully declines to do either.

This case shares the same roots as *ODonnell*. Much like *ODonnell*, there is a clear showing of routine wealth based detention. There is also a clear showing this detention violates procedural due process and equal protection rights. That some of those impacted are accused of felonies, as examined above, does not meaningfully change the analysis.

The apple ought not to fall far from the tree. The Fifth Circuit has designed appropriate relief for an almost identical case. Doing anything different here would put the Court in direct conflict with binding precedent. The Court thus finds that the procedures

required to protect the rights currently in jeopardy are those articulated by the Fifth Circuit in *ODonnell I*.[10]

Broadly, those procedures include "notice, an opportunity to be heard and submit evidence within 48 hours of arrest, and a reasoned decision by an impartial decision-maker." ODonnell I, 892 F.3d at 163. Specifically, the Court is by separate order requiring the relief set forth in the Fifth Circuit's model injunction, slightly modified to fit the facts of this case.

## CONCLUSION

For the reasons stated above, the Court grants Plaintiffs' motion for preliminary injunction. Following *ODonnell,* the Court exercises its discretion under Federal Rule of Civil Procedure 65(c) to waive the bond requirement. *ODonnell*, 251 F. Supp. 3d at 1160 (citing *City of Atlanta v. Metropolitan Atlanta Rapid Transit Authority*, 636 F.2d 1084 (5th Cir. 1981)). Plaintiffs are indigent and "have brought this suit to enforce their constitutional rights." *Id.* The relief shall apply to the class the Court certified in a separate order, and shall take effect within thirty (30) days.

---

[10] It is worth noting that the injunction is not absent an instruction to consider alternatives to secured release. In reaching its conclusion, *ODonnell I* cited case law requiring "meaningful consideration of other possible alternatives" before imposing secured conditions of release an arrestee could not afford. *ODonnell I*, 892 F.3d at 161 (citing *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978)). This instruction was further reflected in the model injunction: twice it states the need for consideration of whether "other condition[s]" will provide "sufficient sureties." *Id.* at 164, 165. The Court adopts this language, but declines to speculate as to whether the Fifth Circuit intended this instruction to further require the precise substantive finding Plaintiffs seek.

Signed September 20, 2018.

_____
David C. Godbey
United States District Judge