1          IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF TEXAS
2                  DALLAS DIVISION

3    SHANNON DAVES, et al,        (  CAUSE NO. 3:18-CV-154-N
            Plaintiffs,           )
4                                 (
     vs.                          )
5                                 (  DALLAS, TEXAS
     DALLAS COUNTY, TEXAS , et al,  )  FEBRUARY 7, 2019
6          Defendants.            (  10:00 A.M.
     ─────────────────────────────────────────────────────

7

8

9

10
     ─────────────────────────────────────────────────────
11

       HEARING ON MOTION TO MODIFY OR CLARIFY
12        ORDER FOR PRELIMINARY INJUNCTION

13      BEFORE THE HONORABLE DAVID GODBEY
          UNITED STATES DISTRICT JUDGE
14
     ─────────────────────────────────────────────────────
15

16

17

18
            SHAWN M. McROBERTS, RMR, CRR
19         1100 COMMERCE STREET, RM. 1504
             DALLAS, TEXAS  75242
20             (214) 753-2349

21

22

23

24

25

1

2

3                          A P P E A R A N C E S

4                        (Only Parties Who Spoke)

5

6                           FOR PLAINTIFFS

CIVIL RIGHTS CORPS               ACLU FOUNDATION OF TEXAS
7   910 17TH STREET NW, SUITE 200    1500 McGOWEN
WASHINGTON, D.C.  20006          HOUSTON, TEXAS   77004
8   (202) 681-2721                   (713) 325-7012
BY:  MR. GEORGE KARAKATSANIS     BY:  MR. ANDRE SEGURA

9

10  AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF TEXAS
11  P.O. BOX 8306
HOUSTON, TEXAS  77288
12  (713) 942-8146
BY:  MS. KALI COHN

13

14                          FOR DEFENDANTS

15  HUSCH BLACKWELL, LLP             TEXAS ATTORNEY GENERAL
1800 BERING DRIVE, SUITE 750     P.O. BOX 12548
16  HOUSTON, TEXAS  77057            AUSTIN, TEXAS   78711
(713) 525-6263                   (512) 463-2120
17  BY:  MS. KATHARINE DAVID         BY:  MR. ERIC HUDSON
MR. PHILIP MORGAN

18

19

20

21

22

23

24

25

```
1              THE COURT:  Be seated.
2         Good morning.
3              MS. DAVID:  Good morning.
4              THE COURT:  So I tried to figure out if there was
5    some better way to do this than having everybody come here and
6    this really -- notwithstanding that some of you have to
7    travel, this seemed like probably the most efficient way to do
8    this.
9         I've looked briefly at the stuff that was filed I believe
10   yesterday, and I see that now you want me to clarify as
11   opposed to modify the injunction.  I appreciate that.
12   Honestly I've got some concerns about that.  Let me just tell
13   you my thinking on that point first, and then we can go
14   forward on the other issues.
15        As I read Sierra Club, it says a couple of times that my
16   power to alter the injunction is limited to maintaining the
17   status quo.  I understand that the context there was a little
18   different--that the injunction, or preliminary injunction
19   there, was to stop people from doing something; so when it's
20   pending, if they figured out an end-way around it, arguably,
21   and I -- my goal is still to stop them from doing that, I
22   ought to be able to stop the end-run in order to preserve the
23   status quo.  That's the context that I understand to be there.
24        It's a little different here, where we're dealing with a
25   mandatory injunction that doesn't say, Stop doing that; it
```

1    says, Okay, now I'm going to require you to go do a bunch of

2    stuff you weren't doing before.  But I'm still faced with the

3    language with the Fifth Circuit that my power to alter an

4    injunction is limited to maintaining the status quo.

5         My sense is that the collective wisdom is that the

6    subject matter of the modifications that everybody is asking

7    for don't really have any material bearing on what the Court

8    of Appeals is addressing in the appeal from the PI, and I tend

9    to think that's probably correct.

10        Here's what makes me nervous.  The language in all these

11   cases is in the form of a notice of appeal divests the

12   district court of jurisdiction over the subject of the appeal,

13   and here I think the subject of the appeal is the preliminary

14   injunction so the facial impact of that is I'm divested of

15   jurisdiction over the preliminary injunction.

16        There's this carve-out for maintaining the status quo,

17   but I don't think you-all are asking me to maintain the status

18   quo, so it looks like to me, arguably, facially I don't have

19   jurisdiction to fiddle with it.  I understand in some

20   circumstances the joint motion.  You-all say, We've got

21   together and we all agree you can do it; we agree you can do

22   it.  The problem I have is if I'm divested of jurisdiction,

23   you-all can't confirm jurisdiction on me by your agreement.

24   Right?  That's Hornbook.

25        So even though you agree today, it's not been unusual in

1    my experience that parties that at one point agree may later

2    disagree, and you can't waive subject matter jurisdiction, so

3    if somebody gets grumpy about the changes I've made down the

4    road, nothing would stop that party from saying, Godbey didn't

5    have subject matter jurisdiction; the orders modifying the

6    injunction are void, and that doesn't do anyone any good.

7         That all said, what's the alternative?  We're -- before

8    I've done anything yet, and it seems to me like the easy

9    alternative is for one or all of you to either file a motion

10   or write a letter to the Court of Appeals and say, Judge

11   Godbey is all anxious and scaredy-cat and doesn't think he can

12   rule on these motions; could you please reassure him that he

13   does not need your permission; or, alternatively, if he does

14   need your permission, would you give him your permission to go

15   ahead and rule on these motions.

16        I don't think that would introduce any significant delay

17   of this.  I think they're pretty responsive on stuff like

18   that.  And if I had their blessing to rule on these, I would

19   be ready to issue an order in a matter of days once I get

20   their approval.

21        So on the first issue, set aside--which we'll get to in a

22   moment--merits of any of the motions to modify--I think where

23   I come out is I would really prefer for one or all of you,

24   preferably all of the people filing motions, to file a joint

25   something or another with the Court of Appeals saying, Give

1    Judge Godbey guidance--either tell him he doesn't need your

2    permission or he's got your permission.  Wouldn't it be

3    interesting if they said, He needs our permission and we're

4    not going to give it to him.  That would be a real wake-up

5    call.  It seems unlikely, but that's certainly a possibility.

6        So those are my thoughts on the first issue.  What do you

7    guys think?  Don't be bashful.

8            MS. COHN:  Good morning, Your Honor.

9        So thank you for thinking about this issue so closely.  I

10   understand your concern, and I think that there is certainly

11   language in *Sierra Club* that -- concerning divestment of

12   jurisdiction.

13       I would point the Court -- and we're happy to provide

14   supplemental briefing on it if it's helpful or, instead, if

15   you'd prefer just to reach out to -- or file a motion before

16   the appeals court.

17       It does seem to me both from *Sierra Club* and from the --

18   some of the discussion in *Coastal Corp,* which is 869 F.2d 817,

19   that the rationale for the status quo sort of exception under

20   Rule 62(c) is an intention to make sure that the relationship

21   between the parties does not change in a way that would

22   materially affect the appeal.  So I would agree with your

23   assessment earlier that, you know, this seems like something

24   that does not affect the relationship between the parties, but

25   certainly if you'd like for us to file that motion, we're

1    happy to do so.

2            THE COURT:  It just seems in the long run that

3    little extra time would probably be worth it to avoid the

4    potential of big problems down the road.

5            MS. COHN:  Sure.  Absolutely.

6        Thank you, Your Honor.

7            THE COURT:  Yeah.  What says --

8        Yes, ma'am?

9            MS. COHN:  I'm sorry.  I didn't mean to walk away

10   when you were speaking.

11           THE COURT:  That's quite all right.  I was calling

12   up the on-deck batter.

13           MS. DAVID:  So I just wanted to point out on one of

14   our motions for -- or one of our requests for clarification,

15   and that is the clarification that the order is not requiring

16   three hearings.  That's an issue that is really time sensitive

17   and important, because the status quo today is we are only

18   having two hearings.  And in the *Sierra Club* case they talk

19   about you should only modify an injunction to achieve the

20   original purposes of the injunction.

21       We are in a unique situation here where the injunction

22   was based on the *O'Donnell* Fifth Circuit injunction, and I

23   think when you look at the details in this case -- and keep in

24   mind that we're both involved in that case, and the State is

25   not involved in it so they don't have the benefit of the

1    background that we do.  In that case what they're talking

2    about the first -- what the State believes is the first

3    hearing is a process called early presentment, which in Harris

4    County is when someone is presented on the papers to a judge,

5    there's no hearing.  And the language -- I think the plain

6    language of your order doesn't say there has to be a hearing.

7    It just says if somebody isn't released early on, then they

8    have to have this individualized hearing.  And what *O'Donnell*

9    is talking about is the importance of the that individualized

10   hearing within 48 hours.

11       And so I don't think clarifying would change anything,

12   and I think it would achieve the original purposes of the

13   injunction.  And, frankly, right now the reading that the

14   State has of the order is causing a lot of confusion and a lot

15   of problems just logistically on the ground.

16       So that's the only one that I think is time sensitive and

17   very important to deal with now, and I think you certainly can

18   under *Sierra Club*.

19       But if you don't want to, and you want to be careful,

20   which I certainly appreciate and understand, just procedurally

21   I think it's important that you actually deny our motions for

22   us to get it to the Fifth Circuit.  I think procedurally we

23   have to have that in order to move to that next step and ask

24   them to give you permission to do so.  So we would ask that

25   you would take that step and just deny the pending motions.

1        THE COURT:  Okay.  I'm denying all of the pending

2   motions to modify without prejudice due to my concern that I

3   lack jurisdiction to address them.  If I am incorrect and the

4   Court of Appeals clarifies that, I am happy to rule on the

5   merits virtually instantly, but I presently believe, given the

6   facial language in *Sierra Club*, that I do not have

7   jurisdiction to address them.

8        MS. DAVID:  Okay.  We appreciate that.  Thank you.

9        THE COURT:  Okay.  When -- can you-all do one

10  pleading with everybody on it, do you think?

11       MS. DAVID:  I think we can, yes, Your Honor.

12       THE COURT:  Okay.  I wouldn't think it would need to

13  be particularly fancy or convoluted; just, Hey, Guys, help us

14  out here.

15       MS. DAVID:  Absolutely.  And we will get that on

16  file ASAP.

17       THE COURT:  Okay.  Great.

18       MS. DAVID:  I'm not sure if the State might be in

19  opposition, but.

20       MR. HUDSON:  If you would like to hear from me for a

21  second?

22       THE COURT:  Sure.

23       MR. HUDSON:  We obviously filed a piece on

24  jurisdiction yesterday.  I'm sure the Court had a chance to

25  take a look at it.

1          THE COURT:  No.

2          MR. HUDSON:  It was the bench memorandum that we

3    filed around 4:00 in the afternoon.

4          THE COURT:  Nope; didn't see that one.

5          MR. HUDSON:  I've got a copy of that as well I can

6    provide the Court now.  It's been filed with them.  If you'd

7    like to take a look, I can hand you my copy.  I know you don't

8    want to read it right this second, but I can explain it fairly

9    quickly.

10          THE COURT:  Go.

11          MR. HUDSON:  The reality of this is that the

12    clarifications that are being sought are not being sought to

13    comply with the intent of the order.  Rather, the County and

14    Plaintiffs have decided that they want to go above and beyond

15    the constitutional floor that this Court set.  And so the

16    issues that we raised in our bench memorandum are that really

17    they want to institute some sort of best practice that they

18    feel is above and beyond what this Court has ordered, and the

19    problem is amending this order--clarifying it as they now put

20    it--is really a modification that's going to create further

21    issues and complicate the relationship of the parties.

22        And so the reason that we oppose this on jurisdictional

23    grounds, as we stated in the bench memorandum, is this isn't

24    just an issue of the jurisdiction about the status quo; this

25    is also they're inviting you to make changes--for instance,

1    having one hearing instead of two--based on evidence that

2    wasn't presented that they now want to present to the Court

3    through some sort of modification motion that's going to

4    create issues like a Sixth Amendment problem when it comes to

5    appointing counsel.

6         As you just heard from the County, their biggest gripe is

7    that we're not giving them attorneys at magistration hearings,

8    and they're saying, Well, this isn't like Houston.  Nobody

9    made that argument to the Court at the PI hearing.  Nobody

10   presented evidence that this was different from Houston at the

11   PI hearing.  Now they say, We want to come in and describe for

12   the Court a completely different scenario and have this Court

13   modify the injunction to create something different than

14   *O'Donnell* based on evidence that was never presented.

15        So it's our position that, even if this Court wanted to

16   clarify, modify, whatever language you want to use, the status

17   quo at this point is the constitutional floor, which is

18   *O'Donnell*.  If everybody's in compliance with *O'Donnell*,

19   there's no need to clarify or modify just because they have an

20   idea about how they want to operate.

21        If the parties are in agreement about what they want to

22   do, there's nothing stopping them from going beyond the

23   injunction.  Right?  They could come together and have

24   whatever powwow that they want about whatever they want to put

25   in place, so long as it complies with the order, if they want

1    to go above and beyond.  It doesn't require an injunction from

2    this Court for the parties to do something that they want to

3    do that's both constitutional and in compliance.

4        And So from our perspective, we don't think that this

5    Court has jurisdiction, and we believe that clarifying,

6    modifying, whatever language you want to slap on it, is really

7    just going to create a mismatch between what's currently

8    happening and what the parties want to happen.  That's not the

9    status quo.

10        THE COURT:  Okay.  I appreciate that.  And I think

11    in many respects that's why I indicated the ruling I did.

12        He raises an issue that I had wanted to explore with

13    you-all.  Have you looked at how much of this stuff in the

14    joint motion you could just do by agreement without my

15    involvement?

16        MS. DAVID:  We have, and I think anything we could

17    do by agreement we would do, but we can't do it without the

18    State's agreement as well, some of the things, and because

19    they have a different interpretation of the order than we

20    do -- and just to briefly address what he was talking about

21    with the Public Defenders, which I didn't talk about at all --

22        THE COURT:  Can you give me an example of one that

23    you don't think you can do by agreement because they have a

24    different reading of it?

25        MR. HUDSON:  If I could approach?

1      MS. DAVID:  So if you look at the State's order that

2  is maybe what he's handing you, I don't know, Exhibit 2 to

3  Docket Entry No. 186, the State -- the district court judges

4  interpret your order to require three hearings, we think.

5  It's very unclear from their order.  They first talk about an

6  individualized hearing and bail review under 1517 in Lew

7  Sterrett, then later they seem to think that's two, and later

8  they seem to think there's a bail hearing that happens after

9  1517 in Lew Sterrett, that there are two hearings.  And

10  they're sending orders telling us what has to happen at this

11  second hearing that doesn't actually occur.

12      So it's creating some confusion and problems, when now

13  we're talking about adding a whole nother layer, a whole

14  nother hearing to the process, and that's the reason we needed

15  your input, because we have magistrate judges who work for the

16  district court judges who are receiving orders saying, You

17  need to have defense attorneys at this bail review hearing

18  that none of us ever believed was even required, and so the

19  magistrates are saying, What do we do?  We're not having bail

20  review hearings; we're having individualized assessments under

21  1517 with the financial affidavit, with the risk assessment;

22  we're doing that, but now they seem to be talking about this

23  new bail review hearing that we're not doing and we don't

24  really have a mechanism for doing and we don't understand how

25  to implement it.  That's the real -- that's why I said that's

```
 1    the immediate problem.  The other issues are smaller and not

 2    time sensitive, but that's a problem.

 3              THE COURT:  Okay.

 4              MR. HUDSON:  If I may, Your Honor.

 5              THE COURT:  Hold that thought for just a second.

 6         Maybe you can't answer this, and if you can't, that's

 7    fine.  Is there any sense of conflict between the Office of

 8    the Attorney General and your clients the Dallas County felony

 9    district judges?

10              MR. HUDSON:  I guess in what regard, Your Honor?

11              THE COURT:  This is ancient history, and I'm showing

12    my age, and times were very different then.

13         There was some litigation involving judicial elections,

14    and Dan Morales was the Attorney General at the time, and all

15    of the district judges in Dallas at the time pretty much were

16    elected republicans, and there was a concern by the judges

17    that the Attorney General might not necessarily share their

18    strategic views in the litigation and, as a consequence, they

19    retained separate counsel and intervened.  I was one of the

20    separate counsel; this is why I know about that.  And there

21    was actually a good bit of a conflict between the position of

22    the Attorney General and the local state officeholders.

23         And I'm -- we've got exactly the mirror image of that

24    right now, and I'm just wondering is that feeding into this in

25    any way, or is there just really a family feud between Dallas
```

1    County and its felony judges and its county judges.

2         MR. HUDSON:  No.  I think -- if I can just -- in

3    terms of the conflict, we vetted that with our office.  I

4    can't really get into the details of that because, obviously,

5    that's attorney/client privilege and work product.

6        What I can comment on is, the County's position right

7    now, if you read the orders for modification that they

8    previously filed, they indicated that they read the Court's

9    order as requiring two hearings.  This Court adopted the

10   *O'Donnell* language.  I pointed that out in the bench memo.

11   There's a magistration, then there's 48 hours later a hearing.

12   Right?  So there's two hearings.  Right?  The magistration,

13   there's no attorney, there's no DA, there's only magistrate

14   and the person that comes in.

15         MS. DAVID:  Are you talking about in Houston?

16         MR. HUDSON:  The County wants to come in and stick

17   counsel at the 1517 hearing, and what they're trying to say is

18   that they want the Court to amend the injunction to require

19   the felony judges to provide counsel at a magistration

20   hearing.  So what they're really trying to do is use this

21   Court's injunction as a bludgeon for the felony court judges

22   to require them to give counsel--something that is not at

23   issue in this litigation.  So the modification to move down to

24   one hearing is really just a maneuver by the County, by

25   Plaintiffs' counsel, to force another requirement on the

1    felony judges that doesn't currently exist.

2         THE COURT:  It doesn't cost your guys anything,

3    though, does it?

4         MR. HUDSON:  Well, that's not really the issue, Your

5    Honor.  The question is whether you have jurisdiction to

6    modify the injunction.  Whether it costs us anything or not,

7    the reality is that if this Court requires us to provide

8    counsel, there's no claim or requirement that would provide

9    counsel at magistration.

10        If the County's modification, clarification, whatever you

11   want to call it, is approved by this Court, really what you're

12   doing is setting up a system where the County's going to come

13   back and say, We can't carry out the hearing we're carrying

14   out the way we want to carry it out because the felony judges

15   won't give us lawyers.

16        MS. DAVID:  Your Honor, we are not asking for that

17   at all.  I don't know where the confusion is, but if you read

18   our motion to modify, we are never asking that you order

19   counsel at this first hearing.  We don't believe it's

20   constitutionally required.  We would love to do it, we think

21   it's the best practice, we've committed funds to do it,

22   absolutely, but we know that we cannot do it without the

23   district court judges.

24        And he referred to Harris County.  I just want to clear

25   it up.  That is not the process in Harris County.  In Harris

1  County, there is -- what we're asking the Court to say this

2  order means, there's one hearing before a magistrate and they

3  do have counsel there--but that's not at all what we're asking

4  you to order here, that's something that wasn't ordered by

5  Judge Rosenthal either, the parties did it voluntarily--and

6  then they have a bail review hearing in front of the sitting

7  judge.  Only two hearings.  Only two hearings.  We're not

8  asking you to do anything different here, and we're not asking

9  you to order counsel at the initial hearing, because we don't

10 think it's constitutionally required.  We would love to do it.

11 We think it's the best practice; that's it.

12        MR. HUDSON:  And this Court would be in a position,

13 if you said you get to have the one hearing, once you bring in

14 a DA and a public defender, now it's at an adversarial and

15 critical stage which triggers counsel, which counsel at this

16 table is down in Galveston County arguing right now is a

17 violation of the Sixth Amendment.

18     So, as I said in my bench memorandum, this whole thing

19 seems geared toward basically forcing the felony judges to

20 give the County and the Plaintiffs what it is that they're

21 looking for.  We don't believe that's the status quo, and in

22 amending or clarifying your order to require the single

23 hearing basically creates a brand new claim.

24        THE COURT:  Okay.  Oh how quickly we've gotten into

25 the merits of this.  But that's okay; we need to chat about

1      that at some point.

2           You touch on an issue that I wanted to raise at some

3      point, and that's that you seem to be advocating for having a

4      lawyer in the room to speak on behalf of the defendant without

5      actually appointing that lawyer as counsel for the defendant.

6      It's kind of a, Well, we've got somebody here who can say

7      stuff for you, but they're not really appointed as your

8      attorney, and they can quit representing you tomorrow and they

9      don't have to have leave of court, and they're not really

10     entering into an appearance, and we don't have to worry about

11     potential conflicts with the Public Defender representing

12     multiple defendants when there is inherently a conflict

13     because this is really just bail, so we don't really need to

14     look too closely at whether we're really creating an

15     attorney/client relationship.  Am I just totally off base, or

16     are we just finessing some of those issues?

17               MS. DAVID:  No, it's a little different.  I mean,

18     that's -- so the appointment is the reason that we have an

19     issue.  We don't believe we can do the scenario that you just

20     laid out where there's a lawyer there who's not appointed a.

21     And the magistrate judges do not have the authority

22     statutorily to appoint counsel, so the only way we could have

23     counsel there is if the district judges did an across the

24     board order, like they've done Harris County and Bexar County

25     saying, We're going to appoint counsel at these hearings if

1    the defendant can sense and, you know, sign something saying

2    it's for this limited purpose, and we deal with all the

3    conflict issues, which the public defender has to deal with in

4    other situations as well.

5        But we have not even gotten to that point and we haven't

6    vetted all that because we all agree that under the statute,

7    the only way they can do this, carry out this role, is if

8    they're appointed by the district court judges.  That's their

9    decision.  They don't want to do that.  That's fine, we can't

10   make them do it, but we're not going to do what you're talking

11   about doing and just throw lawyers in there.  I mean --

12           MR. HUDSON:  Well, actually if you read the order

13   that's referenced in the bench memorandum that she also

14   pointed out was attached to one of their recent filings, the

15   felony judges -- so two things.  First off, it's not just

16   felony judges that appoint, it's also county judges, so I'm

17   not really sure why the felony judges are being singled out in

18   this scenario.  That notwithstanding, the felony judges issued

19   an order that complies with your injunction that says, At

20   hearing number one, the magistration, no appointment.  At

21   hearing number two, the 48-hour hearing, you get limited

22   representation for purposes of that bail review hearing.  That

23   satisfies the two hearings that are set out in the *O'Donnell*

24   model language that this Court incorporated.  We've already

25   entered that order.

1      Ironically, the County doesn't want to do it that way,

2   which this Court declares the policymaker, but for some reason

3   the county won't adopt our policy, and so now we're in the

4   position of they don't like what we're doing, so they're

5   trying to amend the injunction to basically overrule the order

6   that the felony judges entered.  And that's really where we

7   are.

8       MS. DAVID:  And that's where the confusion is, is

9   that the County's reading of your order is that that second

10  hearing he's talking about, the bail review hearing in the

11  jail, it doesn't exist; that's not the status quo; we don't

12  have that hearing.  We have an individualized hearing before a

13  magistrate, 1517 hearing, that happens within 48 hours, well

14  within--they're very fast; and then after that if someone is

15  still in jail on a bail they can't afford, that triggers the

16  right to the adversarial bail review hearing that's before the

17  sitting elected judge.  They appointed counsel for a bail

18  review hearing before a magistrate in the jail which we're

19  saying that's not even in the order, in your order, that

20  doesn't exist, and so we can't do that.  So that's where the

21  confusion is.  We read the order differently.

22      MR. HUDSON:  But there is no confusion.  Basically

23  the County's not conceding that they're out of compliance with

24  the Court's order.  The Court has a temporal -- if you look --

25  I don't see how you can read the injunction -- if you have a

1    second hearing within 48 hours, I don't see how you can read

2    the injunction that you adopted and that exists in *O'Donnell*

3    as saying there's only one hearing.  Right?  It can't be that

4    Hearing A and then, if necessary, a 48-hour hearing is not a

5    second hearing.  And then there is a third adversarial hearing

6    in front of the felony judges or the misdemeanor judges if the

7    person remains in jail after that occurs.  That's three

8    hearings--magistration, bail review within 48 hours, felony

9    judge or misdemeanor judge.

10        And so in this case, honestly, Your Honor, it feels like

11   the County is just trying to sow confusion because they want

12   the amendment that they want, not because there's any need to

13   clarify or modify this Court's order.

14        MS. DAVID:  And Your Honor, he keeps referring to

15   *O'Donnell*.  There are not three hearings down there.  And it

16   might make sense--I don't know what the logistics would be for

17   this--for you to call Judge Rosenthal and talk to her about it

18   if that would be helpful, if you don't trust us or the

19   Plaintiffs.

20        But -- or, I mean, the order, your own -- your injunction

21   says basically if a defendant has executed an affidavit

22   showing inability to pay and then they're not released,

23   they're entitled to a hearing within 48 hours in which an

24   impartial decision-maker conducts an individual assessment of

25   whether another amount of bail or condition provides

1    sufficient sureties.  That hearing is happening.  That's the

2    1517 hearing before the magistrate.  But then the magistrates

3    aren't then reviewing that decision again.  That's then going

4    to the judge of record the next day which --

5         I mean, you might want to get Plaintiffs' point of view.

6    That's how we read it.  We think that's what's required.

7    That's how everyone in Houston reads it.  That's how Judge

8    Rosenthal reads it.  That's the way it's being -- it's

9    operating in Houston.  And then we get an order from the

10   district court judges saying, Now you have -- I mean, we're

11   appointing counsel for this bail review hearing that happens

12   in the jail that no one understands what that means.  And so

13   that's why we're all here and confused.

14             THE COURT:  Okay.  Do Plaintiffs want a turn?

15             MS. COHN:  Thank you, Your Honor.

16        All right.  So I just thought it might be helpful to

17   clarify quickly our understanding of the order which aligns

18   with the County's understanding of the order.

19        The provision at issue is Provision 8.  And on page 4 it

20   explains that if a defendant has executed a financial

21   affidavit showing inability to pay and the magistrate does not

22   order release, that person is entitled to a hearing within 48

23   hours of arrest with an individualized assessment of bail.

24        Thereafter, if we skip down a little bit, if the

25   decision-maker declines to lower bail from an amount the

1   person can afford, or impose an alternative condition of

2   release, then there must be written factual findings and the

3   County must provide a formal adversarial bail review hearing.

4       So I think what's been described here is that when

5   somebody is booked into Lew Sterrett jail, the process

6   currently is that they're asked to fill out a financial

7   affidavit, and then before 48 hours, typically within 24

8   hours, they're going before a magistrate judge for what the

9   County is calling an Article 1517 hearing; what we had talked

10  about in the sort of course of litigation during that

11  preliminary injunction hearing is the magistration.  And at

12  that time the magistrate is considering the financial

13  affidavit and determining what bail setting should be issued.

14      After that, if somebody cannot bail out, then they are

15  booked into the jail.  And at that point our understanding is

16  this formal adversarial bail review hearing kicks in.

17      So our understanding with the processes currently in

18  place at the County, the sort of description here about the

19  affidavit, the financial affidavit and the individualized bail

20  hearing is sort of being combined as one at this Article 1517

21  hearing, and that individuals should be eligible for a formal

22  bail review hearing thereafter.

23      I would also point the Court to the felony judges' order

24  which was filed as Docket 191-1, which appoints counsel for

25  the purpose of a bail review hearing following the

1    individualized bail assessment and initial appearance.  So the

2    felony judges' order, as we understand it, appoints counsel

3    for that sort of later bail review hearing identified in

4    Provision 8 that's before a felony or misdemeanor judge.

5        And certainly we agree with the County that we would be

6    -- we're very glad that the County appointed funds for public

7    defenders to be available at the magistration, and certainly

8    we do agree that that would be the best practice, but we have

9    not raised a Sixth Amendment claim in this case, unlike

10   another case that counsel for the felony judges raised.

11       So all that to say, I don't think that the felony judges'

12   argument that this is an attempt to shoehorn the felony

13   judges' order, which is filed as 191-1, into some other

14   hearing is an accurate characterization of that order.

15            THE COURT:  Okay.

16            MS. COHN:  Thank you.

17            THE COURT:  While you're up there, you also I

18   believe still have, although it's limited, your own motion

19   that the County has not joined in.  Do you want to go ahead

20   and address that now?

21            MS. COHN:  Sure.  Absolutely.  Thank you.

22       All right.  So that motion was re-filed yesterday as 195,

23   an amendment to replace Docket No. 169.  We withdrew the

24   majority of the request for clarification in Docket 195, and

25   so there are only two remaining, and those two concern

1    language in Provision 13 and then language in Provision 8.  So

2    I'll address the language in Provision 13 first.

3         Provision 8 says that there are certain categories of

4    people that don't have access to this individualized

5    consideration and this formal adversarial bail hearing.  The

6    reason is is because they have either this--this is at ECF 165

7    at 3--formal holds preventing a release from detention,

8    pending mental health evaluations, or pretrial preventative

9    detention orders.  Essentially those people are otherwise

10   ineligible for bond, and so they don't need individualized

11   consideration of their release.

12        It's possible, though, that those conditions could go

13   away; that somebody's hold could be lifted.  And what we've

14   asked for clarification on is that at the point at which that

15   hold is lifted, that the person would be treated just like any

16   other arrestee, booked into Lew Sterrett jail, and would be

17   provided with an individualized bail hearing within 48 hours.

18        And, you know, we believe that's a natural reading, it's

19   a natural consequence of the order, but the County Defendants

20   -- and the County Defendants have agreed that they should be

21   given a timely hearing, but argue that sort of applying this

22   48-hour rule that applies to every other arrestee, it would be

23   just too inflexible.

24             THE COURT:  What if we said two business days?

25             MS. COHN:  Well, Your Honor, I think that the issue

1    here is that as soon as that hold is lifted it's -- I guess we

2    can think of it sort of as if that person has been booked into

3    jail for the first time.  They certainly haven't; and they've

4    been in jail, but theoretically, you know, if the hold is

5    lifted they should be treated just like any other arrestee

6    being booked into the jail.

7            THE COURT:  Their issue, as I understand it, in part

8    at least, is some of this may be nights and weekends and it's

9    just not realistic for us to try and turn that around within

10   48 chronological orders, but it sounded to me like if you gave

11   them two business days they wouldn't be anxious about that.

12           MS. COHN:  Well, Your Honor, I have questions about

13   that because the magistrations occur 24 hours a day, seven

14   days a week, and what the COUNTY, you know, was representing

15   earlier --

16           THE COURT:  If I can -- this may not be what they're

17   saying, but this was what I came away with, so maybe they can

18   educate me.  They're not actually being booked in, and the

19   procedures that are normally triggered by somebody being

20   booked aren't necessarily immediately triggered by one of

21   these other contingencies going away; it's just not part of

22   their workflow, and then if that happens on a weekend there's

23   not a real gracious way to merge the two.  And I'm not sure it

24   would cause your folks huge heartburn if it were two business

25   days, and that might fix their problem and then you-all are

1    happy and smiling and everybody's good.  I don't know.  I'm

2    just offering that as a possibility.  You might think about

3    that some.

4                MS. COHN:  Sure.  We can discuss it.

5                THE COURT:  All right.  And do you want to go on to

6    Provision 10?

7                MS. COHN:  Absolutely.

8        So the second provision is Provision 10.  This relates to

9    the reporting requirement.  We appended the first two weekly

10   reports, which Your Honor received from the County via email,

11   and those sort of go over what is currently being reported.

12   So as you see in the reports, it shows the total number of

13   people who were held beyond 48 hours, the date and time that

14   they were booked into the jail, the date and time at which

15   they received their 1517 hearing --

16               THE COURT:  And you want a bunch of other stuff.  I

17   understand that.

18               MS. COHN:  Sure.  And so our concern is that to be

19   able to -- if the purpose of the requirement is to be able to

20   monitor the implementation of the order, there's additional

21   information that's necessary to understand what's happening.

22   And so some of that information which is outlined in Provision

23   10 is, for example, how many arrestees are receiving a

24   financial affidavit and reasons for, for example, somebody

25   being held longer than 48 hours.

1          THE COURT:  When I read this, it struck me as

2     seeming very familiar as a discovery dispute.  We're fighting

3     over how much they have to do.  I assume you-all talked and

4     tried to see if you could work out some compromise and those

5     efforts were unavailing.  Is that correct?

6          MS. COHN:  We did; yes, Your Honor.  We had

7     initially thought that that we would be able to resolve this

8     by agreement, and we were unable to do so.  We do have a

9     discovery conference scheduled for next week so that we can

10    begin the discovery process.  But because these reports are

11    ongoing, we think it's important that this information is

12    included in those reports separate and apart from sort of a

13    rolling discovery request.

14         THE COURT:  Okay.  Just a -- this is a trivial,

15    petty personal issue.  Do those need to come to us, or is it

16    just sufficient if they go to you?  The reports.

17         MS. COHN:  Well, if the Court is interested in that

18    information to be able to monitor the order, certainly they

19    can come to you.

20         THE COURT:  Bluntly, no.  No.  I've got other stuff

21    to do.  I've got a couple of other cases.  I assume if there's

22    anything in there that I need to do something about, that

23    you'll call it to my attention, and unless you call it to my

24    attention, I don't actually need to read those things.  So it

25    seemed to me like it would probably be sufficient if you could

1    just work out something where they provide them to you.

2        If you feel a need to tender them to the Court, I think

3    the easier thing to do is just docket them on ECF, and then

4    the whole world can see them if you think that's beneficial.

5    But just mailing them to us, we don't -- what do we do with

6    them?  Put them in a file; in A drawer?  Then we won't find

7    them later.  I'll have forgotten which drawer I put them in by

8    then.

9        So I know you-all are going to talk about other stuff,

10   but you might think about that--is it enough just to provide

11   them to you and, if not, maybe you can just docket them on

12   CM/ECF and then everybody gets them if any of the other

13   litigants want that as well.

14           MS. COHN:  Absolutely.  We'll discuss that.

15       The last thing I just wanted to mention related to

16   jurisdiction, and I know that you've already determined that

17   you'll be denying these without prejudice, there is also an

18   option that the Court can defer consideration under Federal

19   Rule 62.1(a)(1) for indicative rulings, and so I wanted to

20   bring that to your attention.

21           THE COURT:  Yeah.  And that's why I paused when the

22   County said, You need to deny it, and I wondered if I could

23   just punt on that; but from their perspective if it's cleaner

24   to have a denial to go to the Circuit, if it's without

25   prejudice I don't think it hurts anybody, so let's give them

1   that comfort.

2           MS. COHN:  Okay.  Thank you, Your Honor.

3           THE COURT:  Does the County want to be heard on the

4   Plaintiffs' stand-alone motion for clarification?

5           MS. DAVID:  Yes; just briefly.

6       Your Honor was correct about the workflow issues.  That

7   is a major problem.  The other problem is that sometimes these

8   people are taken to medical facilities, and so right when

9   their medical issue or mental health issue is cleared up

10  they're not in the jail, so they have to be transported back

11  to the jail.

12          THE COURT:  So if they say to you, 48 hours, no;

13  what we meant was two business days.

14          MS. DAVID:  That's better.

15          THE COURT:  Are you happy then?

16          MS. DAVID:  Yeah.  I think that's much more

17  workable.  And that's also helpful because, depending on how

18  long this has been going on, the case is probably pending in

19  front of the actual elected judge and they're not there on the

20  weekend, so it doesn't make sense to take them to a magistrate

21  when they already have counsel and all of that, if that's the

22  situation.

23          THE COURT:  Okay.  Well, please explore with the

24  Plaintiffs if that split the baby works for you-all.

25          MS. DAVID:  We will We will explore that.

1      And then the only other thing I wanted to bring up on the

2  discovery is, I think part of the reason that there's been

3  some issues is because we were waiting to have the Rule 26(f)

4  conference until after the rulings on the motions to dismiss.

5  Do you have any concern with us going forward while we're

6  waiting on the Fifth Circuit?

7           THE COURT:  No, no.  By all means.

8           MS. DAVID:  Okay.

9           THE COURT:  My -- some litigants appear to me to

10 believe that the pendency of a motion to dismiss automatically

11 stays a case, and I've looked and I don't see anything that

12 says that, so by all means press on.

13          MS. DAVID:  Okay.  Thank you, Your Honor.

14          THE COURT:  Okay.  Misdemeanor judges' request for

15 clarification, does anybody want to talk about that?

16          MS. DAVID:  Yes.  So we have two issues on that.

17 One I believe the Plaintiffs are in agreement with and that is

18 simply, to be clear, that where the order says -- again, we're

19 in Paragraph 8, which seems to be where everything is.  On

20 page 4 kind of towards the bottom, where it requires a formal

21 adversarial bail review hearing before a misdemeanor or felony

22 judge, we just wanted clarification that, like all matters,

23 that that could be referred to a visiting judge if, say, the

24 misdemeanor or felony court judge are in trial, that sort of

25 thing.  And the Plaintiffs seem to have no problem with that.

```
 1              THE COURT:  So if we say "or designee," does that

 2    cover it?

 3              MS. DAVID:  Right.  Yes.  That's that.

 4         And then the other issue is the second hearing, whether

 5    that is required even if the defendant and the defendant's

 6    counsel do not want to have that hearing, and the order --

 7              THE COURT:  I'll tell you my reaction to that, and

 8    you can educate me if I'm misunderstanding.  Their concern

 9    was, in part, that an unrepresented defendant might not know

10    to ask for the hearing, and your concern appeared to me you

11    shouldn't require a hearing if they want to waive it.

12              MS. DAVID:  Yes.

13              THE COURT:  And it occurred to me that maybe I could

14    do something to the effect of there presumptively is a

15    hearing, subject to waiver.

16              MS. DAVID:  Yeah.  That's certainly an option.

17              THE COURT:  Does that fix --

18              MS. DAVID:  It fixes most problems.

19         I mean, so in Dallas County the way it works is if

20    someone requests counsel, that counsel is appointed within one

21    business day of the magistration, and that counsel who's

22    appointed is given a notice saying, Hey, you need to ask for

23    this hearing if you want it.  And right now we're

24    automatically having the hearings, but we would prefer for

25    them to say, Yes, we want it, or no, we don't.
```

1    And then the other situation that the Plaintiffs actually

2    point out in their footnote is that some arrestees are hiring

3    private counsel, and then it takes them a while to get their

4    counsel or their counsel is busy, and so then we have the

5    hearing the next business day and there's no one there

6    representing them because their counsel is busy or hasn't been

7    hired or whatever, and so we would prefer not to have a

8    hearing where they're not represented because their counsel

9    didn't get the notice.  It's not as much a problem with

10   appointed counsel as it is with private counsel, if that makes

11   sense.  Just having an automatic hearing that they don't know

12   about it made us a little squeamish.

13        THE COURT:  This sounds cold, and I don't mean it to

14   sound cold, but my immediate reaction is kind of isn't that

15   between the defendant and their retained counsel?  If they're

16   retaining counsel, why don't they get their retained counsel

17   to show up?  And if their retained counsel is too busy to show

18   up, maybe they shouldn't have hired that lawyer.

19        MS. DAVID:  That is one problem, but the other

20   problem is the load on the courts of having these hearings if

21   they don't really serve any purposes in that situation where

22   the lawyer didn't show up and -- but we're still holding the

23   hearing, and it's taking up time and judicial resources and

24   all of that.  It's a lot of people.

25        THE COURT:  Okay.  Anything else on that motion?

1    MS. DAVID:  No, Your Honor.

2    THE COURT:  Okay.  Do Plaintiffs want to be heard on

3 that one?

4    MS. COHN:  Thank you, Your Honor.  I'll be brief.

5    With regard to the first issue that the County raised,

6 the visiting judge, as we outlined in our joint motion for

7 clarification, Docket 194, we agreed to that so long as the

8 visiting judge receives training on the risk assessment tool

9 and using the capability of Pretrial Services.  We think it's

10 very important that if there is a visiting judge, that that

11 person understand the pretrial process in Dallas County so

12 that they can appropriately weigh the information before them.

13    THE COURT:  I think it's always good for the

14 visiting judges to know what they're doing.

15    MS. COHN:  On the second request concerning the

16 automatic hearings, our concern, which I think you articulated

17 well, is that the presumption here should be that people are

18 receiving these hearings and, you know, in the limited

19 circumstances where they don't require them should be able to

20 waive them.  But I think, by and large, that means the

21 majority of people should have access to these hearings.

22    THE COURT:  Okay.  So you're good if it's

23 presumptively there's a hearing, but the litigant or their

24 counsel can waive it.

25    MS. COHN:  Yes.

1          THE COURT:  That's okay with you.

2          MS. COHN:  Yes, that's fine with us.

3          THE COURT:  All right.  Good.

4     I'm not 100 percent sure, but I think I've covered all of

5     the requests for modification in front of me.  Did I miss

6     anything?

7          MR. HUDSON:  If I could just add one thing to that,

8     Your Honor.

9          THE COURT:  Sure.

10          MR. HUDSON:  I know the Court is saying presumptive

11     hearings.  I'm not really sure how the misdemeanor judges are

12     set up in Dallas County.  We didn't join in the motions.  We

13     thought -- frankly, we thought the order was pretty clear.

14     But rather than the presumptive hearings -- if I may approach,

15     Your Honor?

16          THE COURT:  Yes.

17          MR. HUDSON:  We provided a notice to the County.  It

18     strikes to us that if somebody has appointed counsel, which

19     we've offered to do, we've actually asked the County to hand

20     out a notice at the magistration to everybody that comes in

21     there so that they have notice that they are entitled to a

22     hearing.  We've also been attempting to work with the County

23     so that every appointment email that goes out includes the

24     same notice for appointed counsel.  And so from our

25     perspective, the problem of the person not knowing that

1  they're entitled to a hearing is really not an issue so long

2  as the County does what the felony judges have asked and just

3  provide the notice.

4        THE COURT:  I think you may be ascribing a greater

5  degree of sophistication to some of the defendants than they

6  may have.

7        MR. HUDSON:  Well, no, Your Honor, I'm not.  That's

8  why I thought the notice would have been appropriate because

9  the notice said that they're entitled to the hearing, and so

10  at that point -- I mean, you just heard from the County that

11  appointed counsel comes within 24 hours in most cases.  I

12  mean, at a minimum if they the appointed counsel within a day,

13  the appointed counsel who also received the notice should be

14  able to talk to the person about whether they want an

15  adversarial hearing.

16        THE COURT:  Okay.

17        MR. HUDSON:  And so rather than set a presumptive

18  hearing and create a workload that may or may not be

19  necessary, we would suggest that the Court need not to the

20  amend the injunction and just, if anything, require that the

21  notice be served.

22        THE COURT:  Okay.

23        MS. COHN:  Your Honor, may I briefly respond?

24        THE COURT:  Oh so briefly.

25        MS. COHN:  I'd also like to raise just the concern

1   that even if a defendant may know that they are entitled to

2   that hearing, there is not a clear process to request that

3   hearing.  They are in the custody of the Sheriff's Office and

4   the jail, and so the Sheriff's deputies are not trained on how

5   someone would go about requesting that -- or putting in that

6   request I think we have a logistical problem.

7        Thank you, Your Honor.

8            THE COURT:  Fair enough.

9        Okay.  Did I miss anything?

10       All right.  They may file a joint pleading with the

11  Circuit to clarify whether or not I can or should do anything.

12  Are you going to oppose that, do you think?

13           MR. HUDSON:  I need to take a look at what they file

14  first, Your Honor, but my guess is probably yes.

15           THE COURT:  Okay.  Well, it may take a little longer

16  if it's an opposed motion, but I still think they move pretty

17  quickly on that stuff.

18       All right.  Thank you-all very much for coming down.

19  This was very helpful.  I appreciate it.

20       For those of you traveling, safe travels home.

21       The Court will stand in recess.

22                    (End of hearing.)

23

24

25

1        I HEREBY CERTIFY THAT THE FOREGOING IS A

2    CORRECT TRANSCRIPT FROM THE RECORD OF

3    PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

4    I FURTHER CERTIFY THAT THE TRANSCRIPT FEES

5    FORMAT COMPLY WITH THOSE PRESCRIBED BY THE

6    COURT AND THE JUDICIAL CONFERENCE OF THE

7    UNITED STATES.

8

9    S/Shawn McRoberts                02/07/2019

10   _____DATE_____
     SHAWN McROBERTS, RMR, CRR
11   FEDERAL OFFICIAL COURT REPORTER

12

13

14

15

16

17

18

19

20

21

22

23

24

25