IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVES, et al., | ) | **Case No. 3:18-cv-00154-N** |
| | ) | |
| Plaintiffs, | ) | Dallas, Texas |
| | ) | August 2, 2018 |
| v. | ) | 1:00 p.m. |
| | ) | |
| DALLAS COUNTY, TEXAS, | ) | |
| et al., | ) | TELEPHONE CONFERENCE |
| | ) | |
| Defendants. | ) | |
| ─────────────────────── | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE DAVID L. HORAN,
UNITED STATES MAGISTRATE JUDGE.

TELEPHONIC APPEARANCES:

For the Plaintiffs:            Elizabeth Rossi
                              CIVIL RIGHTS CORPS
                              1601 Connecticut Ave. NW,
                                Suite 800
                              Washington, DC 20009
                              (202) 894-6142

For the Felony Judge          Eric A. Hudson
Defendants:                   Kelsey Warren
                              Christopher Lee Lindsey
                              Dominique G. Stafford
                              OFFICE OF THE ATTORNEY GENERAL OF
                                TEXAS
                              P.O. Box 12548
                              Austin, TX 78711-2548
                              (512) 463-2120

For the Dallas County         Philip James Morgan
Defendants:                   Katharine D. David
                              HUSCH BLACKWELL, LLP
                              600 Travis Street, Suite 2350
                              Houston, TX 77002
                              (713) 525-6262

```
 1   APPEARANCES, cont'd.:

 2   For the Dallas County        Peter L. Harlan
     Defendants:                  DALLAS COUNTY DISTRICT ATTORNEY'S
 3                                  OFFICE
                                  133 N. Riverfront Blvd., 11th
 4                                  Floor, Suite C4-2, LB 19
                                  Dallas, TX  75207
 5                                (214) 653-3690

 6
     Recorded by:                 Shakira K. Todd
 7                                UNITED STATES DISTRICT COURT
                                  1100 Commerce Street, Room 1452
 8                                Dallas, TX  75242-1003
                                  (214) 753-2165
 9
     Transcribed by:              Kathy Rehling
10                                311 Paradise Cove
                                  Shady Shores, TX  76208
11                                (972) 786-3063

12

13

14

15

16

17

18

19

20

21

22

23

24
             Proceedings recorded by electronic sound recording;
25             transcript produced by transcription service.
```

1                    DALLAS, TEXAS - AUGUST 2, 2018 - 1:01 P.M.

2            THE COURT:  Good afternoon.  This is Judge Horan.

3            MR. HARLAN:  Good afternoon, Judge.

4            THE COURT:  And I'll just say for the record, this --

5    I'm sorry, just a minute.  This is Case No. 3:18-cv-154-N.

6    This is a telephone conference at the request of Plaintiffs'

7    counsel.  And I'll take appearances.

8            MS. ROSSI:  Good afternoon, Your Honor.  This is

9    Elizabeth Rossi for the Plaintiffs.

10            THE COURT:  Good afternoon.

11            MR. HARLAN:  Peter Harlan, Assistant District

12    Attorney, on behalf of the Dallas County Defendants.

13            THE COURT:  Good afternoon.

14            MR. MORGAN:  Phil Morgan and Kate David from Husch

15    Blackwell on behalf of the Dallas County Defendants, Your

16    Honor.

17            THE COURT:  Good afternoon.

18            MR. HUDSON:  Eric Hudson, Kelsey Warren, Chris

19    Lindsey, Dominique Stafford, on behalf of the Felony Judges.

20            MR. HUDSON:  Good afternoon, Your Honor.

21            THE COURT:  Anyone else?  Okay.  So, I've seen some

22    e-mail correspondence, and I know defense counsel has spoken

23    to both Ms. Todd and Ms. Repass in my chambers.  I guess, just

24    to recap, so where I understand things to be, last Friday we

25    had the telephone oral argument hearing on the various

discovery motions, including Plaintiffs' motion for limited

discovery.  After hearing argument and after receiving

briefing, I denied that, with the exception of permitting

Plaintiffs to serve on one or more appropriate defendants a

request for production for audio and video recordings from

some three-day span between July 1 and July 8th, 2018 of bail

hearings, and otherwise denied the leave for limited

discovery.

There was -- also, and I indicated on the phone during

that oral argument hearing and then memorialized in the

electronic order just after that that the requests should call

for the Defendants to produce those recordings by today,

August 2nd.  And I believe I said on the call that, if in the

course of the Defendants seeking to pull that material

together and get it produced, if there were issues with the

production of that material, that it would make sense to reach

out to my chambers and get on the phone and we can try and

work though those issues, with any luck, without any motion

practice as to that request for production.

It was also, as I understood it, everyone's expectation

that this last Monday, that three days after the hearing, that

the deadline was -- the deadline for Defendants to file their

declarations, which would indicate -- the declarations that

they were putting into the record pursuant to Judge Godbey's

order, and that those declarants would be made available for

1    cross-examination, and that, at least with regard to the

2    Dallas County Defendants, there had been an agreed -- you

3    know, they had at that point agreed that if, after seeing

4    those declarations, Plaintiffs' counsel believed there were

5    additional adverse witnesses that they believed they needed to

6    call by way -- or present by way of subpoenaed testimony at

7    the hearing, that the Dallas County Defendants would not

8    object to those subpoenas, provided that Judge Godbey had

9    granted permission on a motion by Plaintiffs to modify his

10   existing ordered plan for the hearing and to permit such

11   adverse witness testimony in the course of the hearing to be

12   held a week from tomorrow, August 10th.

13        And, you know, as I recall, the Felony Judge Defendants

14   had not yet committed that they would not oppose subpoenas.

15   But in any event, I do believe I made clear that I didn't find

16   good cause for the requested depositions.  In any event, that

17   none of this changed that.  And, of course, as I made clear, I

18   have no idea whether Judge Godbey will or will not -- would or

19   would not allow subpoenaed adverse witnesses' testimony beyond

20   those who are the declarations based on the process and, you

21   know, scope of evidence for the hearing that he laid out in

22   his order granting the Plaintiffs' motion for a hearing.

23        So, as I understand it, that's where we're at.  But I

24   understand that Plaintiffs' counsel asked for this conference

25   to raise some issues regarding additional discovery that you

1    believe you need based on the declarations that were filed on

2    Monday?

3             MS. ROSSI:  That's correct, Your Honor.  I'd be happy

4    to explain a little bit what our request is.

5             THE COURT:  Okay.  Please.

6             MS. ROSSI:  So, -- I'm sorry?

7             THE COURT:  Yeah.  Go ahead, please.

8             MS. ROSSI:  Thank you.  And thank you for taking the

9    time to have this.  I know you have a very busy schedule.  And

10   we're hoping that this will be a very quick, simple hearing.

11        We now have seen the County's evidence.  They presented

12   three declarations on Monday, the upshot of which is an

13   argument that appears to be that the system now is functioning

14   quite differently than it did when we filed the lawsuit.  And

15   at last week's status conference, last week's discovery

16   hearing, the Court emphasized that the Plaintiffs would need

17   to show a present risk of irreparable harm.  But it's very

18   difficult to do that if we don't have the information we need

19   to effectively cross-examine their witnesses on their

20   recently-made claim that things are different -- for example,

21   that they have voluntarily ceased this illegal conduct.  It's

22   most important that we be able to know when that happened and

23   whether it's actually -- whether this is something that

24   actually changed in the way that they claim that it has.

25        And the best evidence of that which we need to show

1   irreparable harm from which the Court will need to determine

2   whether voluntary cessation might apply are the videos of the

3   hearings that have occurred over the last several months and

4   any policy documents that memorialize these so-called

5   irrevocable permanent changes to the system.

6       And so, as the Defendants proffered last week, they did

7   submit a declaration from their chief magistrate judge, and we

8   will be able to cross-examine her about the system that

9   existed when we filed and how it exists now, but they haven't

10  provided us any information about when the system changed or

11  what has changed about it.  And moreover, they've blocked us

12  throughout this case and prior to filing from observing the

13  bail hearings.  I think, as the Court knows, these bail

14  hearings are conducted in the jail in a room that's closed to

15  the public, and they've denied access to us and to the public

16  for the duration of this lawsuit.  And now they're also

17  refusing to produce video recordings, to the extent they

18  exist, of these hearings.  And meanwhile, they're going to ask

19  Judge Godbey to rule that they've irrevocably changed their

20  practices, that the Plaintiffs cannot demonstrate irreparable

21  harm and the need for an injunction.

22      And so what our request is is leave to sort of very

23  limited discovery requests that we think is necessary to

24  produce evidence that we think will be necessary for us to

25  show irreparable harm and so the district judge can make a

1    decision about that legal issue.

2            THE COURT:  Well, I'm confused.  I ordered that there

3    be three days' worth of video and audio recordings from just

4    the last several weeks of the bail hearings.

5            MS. ROSSI:  Yes, Your Honor.  And we're looking

6    forward to reviewing those.  However, all those will show us

7    is what is happening essentially now.  That's not --

8            THE COURT:  But that's what you --

9            MS. ROSSI:  But what they're saying is that they have

10   --

11           THE COURT:  That's what you just told me you needed.

12           MS. ROSSI:  I'm sorry.

13           THE COURT:  I'm sorry, but that's what you just told

14   me you need, and you -- but then you also told me the

15   Defendants are refusing to produce video.  I mean, are you

16   saying you need video --

17           MS. ROSSI:  I'm sorry.

18           THE COURT:  -- from a period after July 8th for some

19   reason?

20           MS. ROSSI:  I'm sorry, Your Honor.  I was -- I was

21   unclear.  What I'm saying is that the Defendants have said

22   that our system works different now than it did in January.

23   But we don't know when those changes were made.  For example,

24   we don't know if they were policy changes that were ordered

25   last December or this January or two weeks ago.

1          We also don't know whether those policy changes -- you

2     know, Judge McVea, who submitted a declaration, doesn't

3     conduct the vast majority of these magistration hearings.  So

4     although she can testify to what her understanding is of the

5     policies, it's not clear that she assisted on or knows what's

6     happening at each of them.  And so the best evidence of that

7     are these video recordings, and not just from a couple weeks

8     ago, but from hearings that took place in April, May, and June

9     as well, so that we can determine from those videos when the

10    hearings changed, if they've changed, and how they've changed.

11         Again, they've refused to tell us when any changes were

12    made or what exactly changed, and so it's impossible to

13    address the voluntary cessation factors without knowing how

14    long these changes have been in place and whether they've been

15    consistently applied, whether they're written or oral

16    policies.  And those factual issues are going to be critical

17    for Judge Godbey to make a determination of irreparable harm

18    and voluntary cessation.

19         THE COURT:  Won't you have to ask at the hearing?  I

20    mean, I --

21         MS. ROSSI:  Yes, Your Honor, we'll have an oppor...

22    I'm sorry.

23         THE COURT:  Well, let me back up.  If Defendants are

24    claiming that there's no need for an injunction because of

25    voluntary cessation of the alleged illegal conduct that gave

1    rise to the lawsuit in the first place, whose burden is that?

2    Wouldn't that be theirs?

3          MS. ROSSI:  Yes.  The burden to prove voluntary

4    cessation is theirs.  That's correct.

5          THE COURT:  All right.

6          MS. ROSSI:  But it's also --

7          THE COURT:  Well, I mean, I just --

8          MS. ROSSI:  But we can't -- we can't --

9          THE COURT:  Go ahead.  No, you --

10         MS. ROSSI:  I just -- I just -- it's very difficult

11   and virtually impossible to cross-examine their witness

12   without these written policies and the videos, which are in

13   their possession.  The burden on them is extremely low so that

14   they can -- for them to produce these to us.  They represented

15   last week that they have the videos.  If the written policy

16   documents exist, they would be very easy to produce it.

17      And so they're trying to meet their burden to demonstrate

18   voluntary cessation, but also withholding the evidence that we

19   need to test the veracity and credibility and the durability

20   of these policy changes that they're claiming are in place.

21         THE COURT:  Well, I mean, I'm just -- for the moment,

22   I'm just focused on these videos.  We can talk about the

23   policy documents in a minute.  But I guess I'm just -- you

24   want leave to request certain days, like, several days' worth

25   of videos from each of the months before you filed in the

1    hopes that -- I mean, that just seems a very inexact way of

2    going about getting what perhaps is a pretty exact fact, which

3    is, when did you -- when did any policy go into place?  Is it

4    written?  And when did the hearings change accordingly?  I

5    mean, you all are just going to -- you want to just look at

6    like five days' worth of videos in March and five days' worth

7    of videos in April and see if you can figure out what changed?

8    I mean, --

9         MS. ROSSI:  Your Honor, we're looking for several

10   days of videos from each of the months since we filed this

11   lawsuit.  You know, the -- part of the lawsuit is not -- or,

12   this lawsuit is not exclusively about the written policies

13   that exist but it's about the customs and the practices and

14   how those policies are applied.  And so the testimony from

15   Judge McVea about her understanding of the policies is

16   interesting and relevant and important, as are the written

17   policy documents that we're requesting now, but the best

18   evidence of what the policies -- of how the policies got

19   implemented and whether these written documents and whether

20   Judge McVea's testimony is accurate is the videos of what's

21   actually happening at these hearings when arrestees appear

22   before a magistrate.

23        THE COURT:  I -- you know, I mean, I have looked at

24   your briefing on these mootness and standing issues.  I mean,

25   that -- as I understood the -- these discovery -- I mean, most

1    of the mostly discovery requests that I've previously ruled on

2    that was -- our hearing, I was focused mainly on the

3    preliminary injunction.  I see how the two are intertwined.

4    But help me understand why this temporal element is so

5    important.  I mean, why is it -- why does it matter whether --

6              MS. ROSSI:  Oh, I --

7              THE COURT:  -- whether it happened in March or

8    February or June?

9              MS. ROSSI:  Sure.  Thanks.  Thanks, Your Honor.  I

10   think the reason -- I think it matters for a couple reasons.

11   One, if the changes happened, you know, last week, it's much

12   less -- it suggests that the changes happened in response to

13   litigation, because a preliminary injunction hearing was

14   coming up and that because their declarations were due.  If it

15   happened, you know, at the beginning of January in response to

16   reform efforts that were happening on the ground anyway in

17   Dallas, the analysis may be different about irreparable harm

18   and voluntary cessation.  If the policies are written as

19   opposed to oral, it suggests a different level of permanence.

20   These are all things that we just simply need an opportunity

21   to present to Judge Godbey so that he can make a factual

22   determination about the validity of their claim that their

23   policies have changed and are constitutional.

24        And most importantly, and this is what the videos will

25   show us, we anticipate, is whether whatever those policy

1    changes are are being consistently applied, which is one of

2    the most important factors under the voluntary cessation

3    precedent.  So the timing is really critical so that the

4    district judge can make a determination about whether these

5    changes are permanent, whether they're firm, and whether the

6    Plaintiff class is likely to suffer irreparable harm because

7    the Defendants, absent an injunction, are substantially likely

8    to return to their prior illegal conduct.

9            THE COURT:  All right.  Well, Mr. Harlan, let me hear

10   from you.

11           MR. HARLAN:  Well, Your Honor, I think that it would

12   be more appropriate for Mr. Morgan to address these issues

13   than it would be for me, so I'll defer to him.

14           THE COURT:  Okay.  That's fine.  I was just taking a

15   shot in the dark, I guess.

16           MR. MORGAN:  Your Honor, Phil Morgan for Dallas

17   County Defendants.

18      Where, you know, where we are -- were last week, what is

19   going on in July in the videos -- first, let me be clear.  We

20   are producing the videos the Court ordered today, just so the

21   record is clear on that.

22           THE COURT:  Okay.

23           MR. MORGAN:  The Plaintiffs will have three days of

24   videos to review.  They will see what the current processes

25   are in Dallas County.

1      What happened in June, what happened in May, what happened

2    in April, has no bearing on what the practices are today that

3    they're seeking to enjoin.  So asking for additional days

4    looking backwards is simply harassing.

5      And frankly, Your Honor, you hit the nail on the head:  If

6    they were really concerned about what was going on, you know,

7    today, they'd be -- they'd say, hey, we need additional videos

8    from more recent.  But looking backwards, backwards-looking

9    videos have no bearing on the issue today.  The declarations

10   are clear.  The Declarants will be there for cross-

11   examination.

12     I mean, you heard Ms. Rossi.  She's saying, well, the best

13   evidence.  Well, the best evidence is the videos is about how

14   representative practices, and then we'll have people there on

15   which to testify about the videos.  I mean, Plaintiffs have

16   everything that they need to go to the August 10th hearing,

17   and requiring additional video production one week before the

18   hearing serves no purpose, and frankly, is burdensome.

19     As to the written policies, practices, and instructions,

20   which is another request for production, I'd like to make two

21   points.  One, Plaintiffs' own complaint filed in late January

22   2018 talks about changes in policies and practices.  In

23   Paragraph 19 of their complaint, they say, Upon information

24   and belief, the Misdemeanor Judges recently authorized but did

25   not require Magistrates to grant release on unsecured bonds.

 1    Plaintiffs knew that the policies, practices, and procedures

 2    were changing.  If they needed those written policies,

 3    practices, and procedure, it's back to what we were arguing

 4    about last week:  They should have sought that discovery

 5    months ago, not one week before the hearing.

 6        On top of that, when we did get the requests for

 7    production, we sent it to our clients, and our clients have

 8    responded.  If they have to respond to that request for

 9    production on an expedited timeline, they can't do their job.

10    It would be burdensome and impossible to comply with.  So,

11    when Plaintiffs say, oh, Your Honor, it's so easy, just hand

12    them some documents and e-mails, that's not at all accurate or

13    true.  And our clients have confirmed that our clients cannot

14    produce that.

15        And we haven't even talked about the other items that they

16    requested, but I'll go ahead and do it now.  The jail

17    population report and the audit report, nothing in our

18    declaration speaks to those.  So we're not here today where

19    Plaintiff says, you know, Judge McVea tossed out some

20    documents and we would like to have the underlying documents

21    that Judge McVea talked about.  That's not what we're here

22    today.  This is -- this is Plaintiffs, one week now before the

23    hearing, seeking discovery that they should have sought and

24    that they knew existed months ago.  And to ask for expedited

25    discovery at this point, they have not shown -- frankly, they

1  have not shown good cause.  We find it harassing.  We should

2  go to the hearing on the 10th with the evidence that we have

3  and they'll have Dallas County Defendants that are cross-

4  examined and we can go forward.

5         THE COURT:  Well, I mean, Mr. Morgan, let me ask you

6  about the written -- any written policies.  I mean, as against

7  like videos, where you can -- well, anyways, as against what

8  you've already said about the videos, if there are some

9  documents -- well, I guess I don't know.  I mean, I can't -- I

10  can't pretend to have any personal experience -- it'd be weird

11  if I did, I guess, if I was sitting in this position doing

12  these discovery issues in this federal case -- but I don't

13  know the way that internal court business is conducted, you

14  know, at the -- in Dallas County or within -- among the

15  magistrates there or as between them and the court

16  administrators.  But, I mean, are you saying that any

17  documents reflecting some -- any kind of policy change or

18  procedure or protocol change that was conveyed to all the

19  magistrates are voluminous documents?   I mean, is it --

20         MR. MORGAN:  Well, Your --

21         THE COURT:  Is it just --

22         MR. MORGAN:  Well, Your Honor, I mean --

23         THE COURT:  I mean, maybe it is, but, you know, I

24  guess I have -- of everything that Plaintiffs are right now

25  asking for, you know, having actual -- that actual -- because

1  that's -- I mean, put it this way.  I mean, if Ms. Rossi gets

2  up and goes to cross-examine one of your declarants and they

3  say, well, you know, it was pursuant to that policy.  Well,

4  you know, what is it?  Well, it's sort of a written policy.

5  When was it dated?  I don't have it in front of me, I don't

6  know.  I mean, it -- that may all end up being a bit

7  unsatisfying, including for Judge Godbey as a fact-finder.  So

8  I guess I'm just curious if there aren't some core documents

9  with regard -- that reflect any -- or reflect or -- reflect or

10  perhaps, you know, made to happen any sort of policy changes

11  that we're talking about here that couldn't be produced

12  without undue burden.

13        MR. MORGAN:  Sure.  Let me address that.  Your Honor,

14  we just got the requests for production yesterday.  We sent it

15  to Judge McVea.  And her initial response was, no, it would be

16  unduly burdensome to do this.  Because Plaintiffs' request

17  asks for written guidance, policies, instructions, directives,

18  advisories.  I mean, any e-mails sent.  They -- I mean, they

19  didn't draft a narrow request.  They're seeking it back to

20  July 1, 2017.  And so, in speaking with our client, yes, it

21  would be burdensome to respond to that request on this short

22  timeline.

23     On top of that, it doesn't -- it begs the question of they

24  talk about these advisory guidelines, directives, in their

25  complaint filed in January.  They knew that there were

1  directives and guidelines and policies out there.  They knew

2  that there had been a change in policy.

3         THE COURT:  Yeah, but they've pled it on information

4  -- Mr. Morgan, they've pled it on information and belief.  I

5  mean, that suggests they didn't actually have the documents in

6  front of them and that they were pleading at the lowest

7  possible level that they can to survive Rule 11 based on

8  information that they had available to them in order to bring

9  their claims and then, you know, seek to substantiate it in

10 discovery.

11      And I hear you that --

12         MR. MORGAN:  That's correct.

13         THE COURT:  I mean, just understand my point.  I

14 understand that this is very late in the day and I don't think

15 you should expect that there's going to be some, you know,

16 giant discovery process going on over the course of the next

17 six days.  I'm just asking if some much more narrow, you know,

18 narrow discovery of, you know, whatever key documents there

19 are with regard to whatever policies have -- are in place to

20 get the hearings to how they are now, like, you know, as --

21 not how they were two years ago or a year -- well, a year ago.

22 But, you know, what -- are there a few key documents that are

23 what the folks within the system are actually relying on to be

24 doing the hearings the way they are now and that is what gives

25 rise to your clients' position that there's been a cessation

1    of any allegedly unconstitutional or illegal practices such

2    that there doesn't need to be an injunction and there may be

3    mootness?

4            MR. MORGAN:  Your Honor, we -- to address your

5    question directly, I don't know the answer to that.  We didn't

6    specifically talk with our client on that.  We said, we've

7    gotten this discovery request; what do we have?  The response

8    was, we have tons of stuff, I spent two hours, I -- there's no

9    way I'm going to be able to get through all this in a

10   reasonable fashion.

11       If Plaintiffs wanted to serve, you know, if they narrowed

12   the request, we can go back and see.  But what I'm afraid of

13   is what we're going to end up in a position where, one week

14   before the hearing, we've tried to comply.  It sounds like

15   Your Honor is saying you should -- you know, there's got to be

16   something, give them something.  And if we have an order like

17   that and we're on the stand and Judge, you know, Judge McVea

18   or Judge Kennedy, who are two declarants, talk about a

19   different e-mail or something else, then it's going to be,

20   well, they didn't produce it, they didn't produce it, they

21   didn't produce it.

22       And I still go back to, you know, Plaintiffs -- you

23   mentioned it was upon information and belief.  Then why, if

24   they filed suit on January 21st, why on January 22nd didn't we

25   receive requests for expedited discovery and, you know,

1    discovery then?  Why are we not getting a request for

2    production for documents they knew probably existed until one

3    week before the hearing?

4        And so, I mean, the --

5            MS. ROSSI:  Your Honor?

6            MR. MORGAN:  They -- Your Honor, let me finish, and

7    then I'll --

8            THE COURT:  Sure.

9            MR. MORGAN:  The question is, they still need to

10   prove good cause, and their delay in taking discovery is --

11   they can't meet that burden.  They're not entitled to

12   (inaudible) discovery.  Period.

13           MS. ROSSI:  Your Honor, if I can have a minute to

14   respond to some of that.  It's --

15           THE COURT:  Sure.

16           MS. ROSSI:  Thank you.  So, Defendants did not

17   indicate at any point in any of their filings in response to

18   our preliminary injunction motion that they were contesting

19   any of the facts that we had alleged about how the system

20   works.  In the filings, I believe it was the County's response

21   to our preliminary injunction motion, they even said -- they

22   conceded that the magistrates virtually always set bail

23   according to the bail schedule and simply said that there was

24   nothing unconstitutional about that.

25       It was only this past Monday, Monday evening, three days,

1    two and a half days ago, when we received their declarations

2    that we learned at all about any of these changes to the

3    system.

4        We've been working very diligently since this case was

5    filed to confer with Defendants about the facts that are in

6    dispute at the preliminary injunction hearing and to obtain

7    the evidence that we need to give Judge Godbey the evidence

8    that he needs to make the factual findings necessary to rule

9    on our motion.  We've already told Defendants that we will

10   narrow our requests to any directives that have been given to

11   the magistrates relating to policy changes.

12       I'll also note that in Paragraph 6 of Judge McVea's

13   declaration, it refers -- she states that the financial

14   affidavit was added to the post-arrest process, quote, early

15   this year and is a permanent change in the policy and

16   practice.  So that's one example of the type of document

17   that's being referenced or policies being referenced.  So

18   Plaintiffs are clearly entitled to some documentary support.

19       And I don't think -- I think Your Honor was exactly

20   correct.  If they have policy changes that are being

21   implemented, have been implemented, quote, early this year,

22   whatever that means, then for us to effectively cross-examine

23   Judge McVea and the other declarants on what those changes are

24   and how they operate, we're -- we need the evidence and the

25   documents and the videos that will allow us to ask those

1    questions and determine what is actually happening on the

2    ground.

3         You know, just as one example, if Judge McVea were to

4    testify that certain changes went into effect in March, and

5    then, watching the hearings, we see that those same things are

6    happening in April and in May, it's really important

7    information for us to be able to show to Judge Godbey.

8         And Mr. Morgan is simply wrong that the videos from April,

9    May, and June are irrelevant.  Under irreparable harm

10   precedent, it matters whether the changes are recent and

11   whether the people who are actually working in the system, so

12   actually the magistrates at the hearings and the bailiffs who

13   are at the hearings, are following whatever these new policies

14   are that we haven't seen any documentary evidence of.

15        Again, I just would reiterate, the Defendants are trying

16   to say that a preliminary injunction is not necessary because

17   Plaintiffs can't demonstrate irreparable harm because they

18   have proven that there's been permanent changes to the system

19   that resolve all of Plaintiffs' claims, yet they're attempting

20   to preclude us from accessing the evidence necessary to

21   determine the validity and the truth of that argument.

22             THE COURT:  All right.  Well, under all the

23   circumstances, I don't find good cause for you to get

24   additional videos.  I mean, I think you can cross-examine on

25   that.

1    You haven't even -- you didn't bring it up, but I also, to

2  the extent that you all have been talking about jail and

3  population audit reports, I don't find good cause at this

4  stage for you to have discovery between now and the hearing

5  just over seven days from now for that.

6    With regard to any written documents behind any policy

7  changes, which I think would also reflect the effective date

8  of those policy changes, I -- from the -- again, just doing

9  this on the phone, obviously, I don't know what exactly your

10  requests for production that you sent over for discussion

11  purposes with -- to Defendants' counsel look like, but Mr.

12  Morgan has conveyed some of it.  I think that would be too

13  broad and I don't find good cause for that.

14    I think it would make sense for you all to confer and Mr.

15  Morgan to -- and talk about the narrowest possible things that

16  you may need with regard to documents that are the actual

17  implementing documents for changes that got the system to

18  where it is right now, as will be reflected in the hearings

19  from this month that you will be getting today.

20    And, you know, I mean, and so, you know, if Judge McVea,

21  having gotten a request that says, you know, all

22  communications regarding or all documents reflecting and all

23  e-mails discussing, that is a lot of work, potentially,

24  depending on how much internal discussion there was.  But what

25  I do think there may be good cause for, depending on how you

1    all can narrow it and what you can then tell me about what,

2    you know, Mr. Morgan is able to find out from his client,

3    about, you know, actual implementing -- you know, the actual

4    -- any official implementing documents or -- not

5    communications about them, not drafts, not the other documents

6    that reflect, but actual documents that, you know, are --

7    that, you know, are sort of operational in some sense within

8    the County's system.  You know, that may not be unduly

9    burdensome and that may actually be important for the hearing.

10        So, for now, I'm denying the Plaintiffs' request.  I'm

11   denying it entirely with regard to the videos and the two

12   audits, but I'll ask that you all confer this afternoon.  And

13   Mr. Morgan, perhaps if you can visit with your clients and we

14   can reconvene at the same time tomorrow and you all can give

15   me the report on what, you know, what you've been able to work

16   out with regard to that and what Mr. Morgan has been able to

17   find out from his client.

18        Again, I don't envision -- I'm -- I don't know how many

19   ways I can make this clearer, but I'm not envisioning -- I

20   don't -- I wouldn't expect it's a lot of documents and I am

21   expecting a request or even sort of an agreed scope of limited

22   document production here that would be quite limited, but, you

23   know, might -- if they indeed exist, if that is indeed what is

24   out there, that, you know, could be important enough that

25   there could be good cause for it.

1     So, I'll order you all to do that.  We'll reconvene for

2  another telephonic conference on this at 1:00 o'clock tomorrow

3  and we'll go from there.

4          MS. ROSSI:  Your Honor, may I -- one final

5  clarification point, --

6          THE COURT:  Sure.

7          MS. ROSSI:  -- just to make sure I understand what

8  you're ruling on?

9      I understand you found no good cause for the videos or for

10  the audit.  Our other request was for jail population

11  committee reports from May, June, and July.  Those are

12  documents that are typically publicly available and uploaded

13  monthly, is my understanding, uploaded monthly to a publicly-

14  accessible Dallas County website.  The most recent report was

15  uploaded in May and includes numbers from April 2018.  Our

16  request is simply that if those reports exist and have simply

17  -- they've already been generated and just are not uploaded to

18  the external public website, that they be produced to us.

19  We're not asking that they produce anything, but that if these

20  report PDFs are in existence, that they be sent to us.  They

21  have important information --

22          MR. MORGAN:  Your Honor?

23          MS. ROSSI:  -- about, for example, the number of

24  people who are detained pretrial by both misdemeanors and

25  felonies, the number of people released on various types of

1   bonds, and how long people who are released on those different

2   types of bonds must wait in jail prior to being released.  And

3   so they are also very important to the question of the

4   duration of time that impoverished people are detained prior

5   to release.

6       And, again, we're not asking them to generate anything,

7   just to convey to us documents if they already exist.

8               THE COURT:  Mr. Morgan, if you'll --

9               MR. MORGAN:  Your Honor, the --

10              THE COURT:  Sorry.

11              MR. MORGAN:  Sorry.  I don't -- we will -- we will

12   ask.  I think that's reasonable.  But if the reports are not

13   finalized, if they're in draft form, I don't think they should

14   be produced.  In my experience, at least with other counties,

15   is a lot of times those reports, once they're finalized,

16   they're publicly available (obscured) for several months.  But

17   to the narrowed request, if there are final reports

18   publishable -- publishable-ready reports for those months, we

19   can -- we will produce those.  But if they are in draft form,

20   we're not required to.

21              THE COURT:  Yes.  I agree.  I think that's consistent

22   with what Ms. Rossi was saying anyways.  I mean, essentially,

23   she's saying if they're just -- if they're ready to be

24   uploaded, if they're ready to be publically available, they

25   just haven't been made publically available, they would ask that

1  they be turned over, and I agree that that's -- and I agree

2  with you that I think that's reasonable.  So that, that, I

3  will -- I will sort of find good cause for that request, with

4  that understanding.

5           MR. MORGAN:  Okay.

6           MS. ROSSI:  Thank you, Your Honor.

7           THE COURT:  All right.  Thank you.  Okay.  Well,

8  anything else we ought to talk about today?

9           MS. ROSSI:  No, Your Honor, not for the Plaintiffs.

10           THE COURT:  All right.

11           MR. MORGAN:  Nothing for the Defendants, the County

12  Defendants, Your Honor.

13           THE COURT:  For the Felony Judge Defendants?

14           MR. HUDSON:  Nothing for the Felony Judges, Your

15  Honor.

16           THE COURT:  All right.  Thank you.  I will look

17  forward to talking to you again in about 24 hours and find out

18  where we're at at that point with regard to this one possible

19  document request that we've been talking about.  But have a

20  good day.

21           MS. ROSSI:  And now --

22           MR. MORGAN:  Thank you.

23           THE COURT:  Sorry.  Ms. Rossi?

24           MS. ROSSI:  Will you be issuing an order?  Your

25  Honor, will you be issuing an order?

1          THE COURT:  I will issue an order -- honestly, I

2    don't know how I would write up what I just said about you all

3    working that out.  I mean, do you all need -- if you want, I

4    mean, now is the time if you have more clarification.  I mean,

5    I will -- I mean, I could issue an order on the jail

6    population reports and denying your request for additional

7    videos and -- and -- and I'm sorry, what was --

8          MR. MORGAN:  The audit.

9          THE COURT:  The audit report, yes.  But what I am

10   ordering you all to do is to confer to try and come up with an

11   narrowed, very narrow request for production with regard to,

12   you know, actual operational documents for the policies as

13   they currently exist and would, you know, and as,

14   parenthetically, as would be reflected in the videos of the

15   bail hearings from this -- from the month immediately prior,

16   July 2018, should be reflected in that, according to the

17   Defendants.  That -- and ordering that, you know, after you

18   all have been able to talk about that and Mr. Morgan

19   coordinated with his client between now and our 1:00 p.m.

20   conference tomorrow about, you know, whether -- what would be

21   involved, you know, I mean, are there -- what's the scope of

22   any such documents and what would be involved in pulling them

23   together?  And again, I don't know, but as against a much

24   broader request, I'm expecting that that would be less likely

25   to impose a real undue burden.

1       So, and can we use this same call-in tomorrow?

2               MS. ROSSI:  Yes.

3               THE COURT:  Okay.  All right.  So, everyone just plan

4       on the same call-in tomorrow.

5           So I will -- Ms. Rossi, I will, I will issue a short

6       order, but I'm, frankly, I'm just going to very, very

7       shorthand the thing that I'm sending you all off to do, having

8       now tried to convey it twice, so --

9               MS. ROSSI:  Thank you.

10              THE COURT:  All right.

11              MS. DAVID:  Thank you, Your Honor.

12              THE COURT:  Okay.  All right.  Then we'll be

13      adjourned for today.  Thank you.

14              MR. MORGAN:  Thank you.

15          (Proceedings concluded at 1:40 p.m.)

16                              --oOo--

17

18

19                          CERTIFICATE

20          I certify that the foregoing is a correct transcript to
        the best of my ability from the electronic sound recording of
21      the proceedings in the above-entitled matter.

22       **/s/ Kathy Rehling**                        **12/26/2019**

23      _____        _____

24      Kathy Rehling, CETD-444                          Date
        Certified Electronic Court Transcriber

25

INDEX

PROCEEDINGS                                                          3

WITNESSES

-none-

EXHIBITS

-none-

RULINGS                                                    22/26/28

END OF PROCEEDINGS                                               29

INDEX                                                            30