IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHANNON DAVES, et al. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 3:18-cv-154 |
| | § | |
| DALLAS COUNTY, TEXAS, et al., | § | |
| | § | |
| Defendants. | § | |

**DALLAS COUNTY'S BRIEF ON *YOUNGER* ABSTENTION AND SB6**

## TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** ............................................................................... iii

**BACKGROUND** .............................................................................................. 2

    A.    The Complaint ................................................................................. 2
    B.    The Injunction ................................................................................. 3
    C.    The Appeal ...................................................................................... 4
    D.    The *Sanchez* Lawsuit ...................................................................... 6
    E.    The Panel Opinion and Rehearing. ................................................ 7
    F.    The New Bail Legislation. ............................................................... 9
    G.    The En Banc Opinion and Remand. ............................................. 11

**ARGUMENT AND AUTHORITIES** ............................................................ 12

    A.    All of the *Middlesex* factors weigh in favor of abstention. ................. 13
        1.    Each class plaintiff is subject to ongoing judicial proceedings. .............. 14
        2.    Plaintiffs' requested relief would interfere with those proceedings. ........ 15
    B.    The dispute implicates important state interests. ................................. 18
    C.    State proceedings provide an opportunity to raise constitutional challenges. ...... 18
        1.    Plaintiffs forewent multiple opportunities to raise their challenge in state court. ...... 18
        2.    *Gerstein* supports abstention, not further federal intrusion into the state pretrial process. ...... 20
            a)    The requested relief implicates *Younger* ....................................... 20
            b)    *Gerstein* counsels restraint, not overreach. .................................. 21
            c)    A "pattern or practice" challenge implicates *O'Shea*, not *Gerstein*. ...... 23
    D.    Challenges to bail procedures are consistently candidates for abstention. .......... 24
        1.    Wallace v. Kern ....................................................................... 25
        2.    Walker v. City of Calhoun, GA ................................................ 26
        3.    Other relevant authority. .......................................................... 28
    E.    There is no proper party for Plaintiffs' requested injunctive relief. ..................... 30

**CONCLUSION** ............................................................................................. 31

**CERTIFICATE OF SERVICE** .................................................................... 32

## **TABLE OF AUTHORITIES**

**Page(s)**

Other Authorities

*Agriesti v. MGM Grand Hotels, Inc.*,
    53 F.3d 1000 (9th Cir. 2002) ................................................................. 14

*Arevalo v. Hennessy*,
    882 F.3d 763 (9th Cir. 2018) ...................................................... 26, 27, 28

*Bice v. Louisiana Public Defender Bd.*,
    677 F.3d 712 (5th Cir. 2012) ............................................ 13, 14, 15, 20

*Campbell v. McGruder*,
    580 F.2d 521 (D.C. Cir. 1978) ........................................................ 26, 28

*Daves v. Dallas Cnty.*,
    22 F.4th 522 (5th Cir. 2022) ....................... 1, 8, 10, 11, 13, 15, 17, 28, 29

*Daves v. Dallas Cnty.*,
    984 F.3d 381 (5th Cir. 2020) ............................................................... 7

*Fernandez v. Trias Monge*,
    586 F.2d 848 (1st Cir. 1978) ........................................................... 26, 27

*Gerstein v. Pugh*,
    420 U.S. 103 (1975) ......................................................... 19, 20, 21, 22

*Huffman v. Pursue, Ltd.*,
    420 U.S. 592 (1975) ........................................................................ 12

*Joseph A. ex rel. Wolfe v. Ingram*,
    275 F.3d 1253 (10th Cir. 2002) .......................................................... 14

*Kirby v. Illinois*,
    406 U.S. 682 ................................................................................. 14

*Madrid v. State*,
    751 S.W.2d 226 (Tex. App.—El Paso 1988, pet. ref'd) ......................... 28

*Martin v. Dallas Cnty., Tex.*,
    822 F.2d 553 (5th Cir. 1987) .............................................................. 22

*Moore v. Sims*,
    442 U.S. 415 (1979)................................................................... 17, 22

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) .................................................................................... 14, 15, 16

*ODonnell v. Harris Cnty.*,
    882 F.3d 528 (5th Cir. 2018) ............................................................................ 3, 10

*Pennhurst State School & Hospital v. Halderman*,
    465 U.S. 89 ........................................................................................................... 15

*Pugh v Rainwater*,
    572 F.2d 1053 (5th Cir. 1978) ............................................................................. 17

*Sanchez v. Brown*,
    No. 3:20-cv-832-E, 2020 WL 2615931 (N.D. Tex. May 22, 2020) ......... 5, 6, 17, 19

*Stack v. Boyle*,
    341 U.S. 1 (1951) .................................................................................................. 18

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ........................................................................... 26, 28

*Tarter v. Hury*,
    646 F.2d at 1013 ...................................................................................... 16, 23, 25

*Tex. Ass'n of Bus. v. Earle*,
    388 F.3d 515 (5th Cir. 2004) ............................................................................... 13

*Walker v. City of Calhoun, Ga.*,
    901 F.3d 1245 (11th Cir. 2018) ................................................................... 8, 25, 26

*Wallace v. Kern*,
    520 F.2d 400 (2d Cir 1975) ..................................................... 8, 14, 15, 17, 24, 25

*Whole Woman's Health v. Jackson*,
    142 S.Ct. 522 (2021) ............................................................................................ 20

*Younger v. Harris*,
    401 U.S. 37 (1971) ................................................................................. 1, 12, 13, 19

**Statutes**

42 U.S.C. § 1983 ......................................................................................................... 29

Tex. Code Crim. Proc. art. 11.01 ......................................................................... 18, 22

Tex. Code Crim. Proc. art. 15.17 ............................................................................... 15

Tex. Code Crim. Proc. art. 17.03 ............................................................................... 18

Tex. Code Crim. Proc. art. 17.021 ............................................................................. 10

Tex. Code Crim. Proc. art. 17.022 ............................................................................. 10

Tex. Code Crim. Proc. art. 17.023 ........................................................................................ 10

Tex. Code Crim. Proc. art. 17.024 ........................................................................................ 10

Tex. Code Crim. Proc. art. 17.027 ........................................................................................ 10

Tex. Code Crim. Proc. art. 17.028 ........................................................................... 9, 10, 18, 21

Tex. Code Crim. Proc. art. 17.0501 ...................................................................................... 10

**<u>Other Authorities</u>**

SB 6 ................................................................................................. 1, 2, 11, 13, 14, 17, 35

SB 21 ............................................................................................................................... 11

The Fifth Circuit has ordered a limited remand for this Court to determine whether abstention is required and the effect, if any, of new Texas bail legislation on the issues before the Court. *See Daves v. Dallas Cnty.*, 22 F.4th 522, 529 (5th Cir. 2022) (en banc).

The Dallas County Defendants previously urged—and still urge—this Court to abstain under *Younger v. Harris*, 401 U.S. 37 (1971). *See* ECF No. 33, at pp. 7-15 (County Judges' Motion to Dismiss); ECF No. 28 (Dallas County's Motion to Dismiss, incorporating County Judges' Motion to Dismiss); ECF No. 29 (Sheriff Brown's Motion to Dismiss, same); ECF No. 30 (Magistrate Judges' Motion to Dismiss, same). Plaintiffs seek relief that directly targets how and what happens at state judicial proceedings (bail setting), which proceedings themselves provide an opportunity to raise the constitutional challenge (through a statutory bail review hearing or a writ of habeas corpus), implicating an undisputedly important state interest (the administration of criminal justice). The importance of that state interest, and the availability of state court remedies, has only been underscored with the Texas Legislature's enactment of SB6[1] in the most recent legislative session.

The *ODonnell v. Harris County* Fifth Circuit panel, considering this question with respect to Harris County, declined to abstain under *Younger*. But the *en banc* Fifth Circuit expressly decided that the *ODonnell* analysis does not govern this Court on remand. *See Daves*, 22 F.4th at 548 (also empowering this Court to "reach the result it considers appropriate even if it is inconsistent with any of [the Fifth Circuit's] precedent," other than as the law is expressed in *Daves* itself). Given that *ODonnell* no longer governs, the Dallas County Defendants respectfully request the Court find *Younger* applicable to Plaintiffs' claims for the reasons stated in this brief.

---

[1] *See* Act of August 31, 2021, 87th Tex. Leg. 2d C.S., S.B. 6.

## BACKGROUND

The background of this case, parallel litigation regarding the Dallas County jail system, and Texas legislative changes within the past two years underscore why *Younger* abstention is appropriate here.

### A.    The Complaint

Plaintiffs filed suit on January 21, 2018 and amended their complaint nine days later. *See* ECF Nos. 1, 10. Plaintiffs sued Dallas County, the Dallas County Sheriff, eleven Dallas County Criminal Court at Law Judges, seventeen Dallas County District Court Judges, and five Dallas County Magistrates. Plaintiffs sought wide-ranging and unprecedented declaratory and injunctive relief against almost all defendants, including the Misdemeanor and Felony Judges. Only the Magistrates were sued for exclusively declaratory relief. Plaintiffs also filed motions for class certification and preliminary injunction. ECF Nos 2; 3. The court ultimately certified a class, which no party appealed.

Plaintiffs alleged (1) that all defendants violate Plaintiffs' equal protection and due process rights against wealth-based detention, brought under the Fourteenth Amendment; (2) that all defendants violate Plaintiffs' right to pretrial liberty by depriving them of procedural due process, brought under the Fourteenth Amendment; and (3) a First and Fourteenth Amendment claim for right of access to initial bail hearings, directed against only the County and the Sheriff by two organizational plaintiffs. Plaintiffs have not pursued and have seemingly abandoned the right of access claim.

Specifically, Plaintiffs sought a preliminary and permanent injunction that "Defendants" were prohibited from operating a "system of wealth-based detention" without conducting "an inquiry into or findings concerning ability to pay," including "consideration of non-financial

2

alternatives, and [] findings that a particular release condition—or pretrial detention—is necessary to meet a compelling government interest"; and a declaratory judgment that Defendants did in fact operate such a system. ECF No. 10, at p. 61.

### B.     The Injunction

Shortly after Plaintiffs filed suit, but well before the preliminary injunction hearing in this Court, the Fifth Circuit issued an opinion in an appeal from a preliminary injunction in a nearly identical challenge to the pretrial system in Harris County, featuring virtually all the same counsel that represent the parties in this suit. *See ODonnell v. Harris Cnty.*, 882 F.3d 528 (5th Cir. 2018), *withdrawn and superseded on panel reh'g*, 892 F.3d F.3d 147 (5th Cir. 2018).

After a one-day hearing in August 2018, the Court certified a class and entered an injunction largely along the lines of the Fifth Circuit's model injunction in *ODonnell. See* ECF No. 165 (injunction); ECF No. 166 (order certifying class).

The injunction's material provisions were:

- **Financial Affidavit**: Pretrial Services would verify an arrestee's ability to pay a bail amount by having the arrestee complete a financial affidavit, with that affidavit to include specific details about an arrestee's financial situation as spelled out in the injunction;

- **Individualized Hearing**: A defendant who completed an affidavit "showing an inability to pay secured money bail" was entitled to a hearing, within 48 hours from arrest, at which an impartial decision-maker would conduct an individualized hearing. At the hearing, the arrestee would have an opportunity to present and respond to evidence. If the decision-maker declined to lower the bail amount or impose an alternative condition of release, the decision-maker was required to make written findings or findings on the record explaining the reason for that decision.

- **Formal Adversarial Bail Review Hearing**: The County was required to provide the arrestee with a formal adversarial bail review hearing before a Misdemeanor or Felony Judge for any arrestee whose bail amount was not lowered after the individualized assessment.

- **Sheriff's Role**: The Court "authorized" the Dallas County Sheriff to decline to enforce bail orders that were not accompanied by a "record" showing that an arrestee received an individualized hearing and an opportunity for formal review. However, all other conditions of release "ordered by the Magistrates" were to "remain in effect."

- **Weekly Reporting**: The County was ordered to make a weekly report, to this Court, of defendants who did not receive an individualized assessment within 48 hours of arrest. The injunction specifically contemplated future intervention from the federal Court, notifying the County that a "pattern of delays might warrant further relief from the district court."

While the injunction did not purport to order relief against judicial officers as such, the injunction effectively dictated what judicial officers could or could not do while setting bail. And its reach extended beyond just the judicial act of setting bail to constrain Pretrial Services to perform certain functions, and to "authorize" the Sheriff to take or not take certain actions for defendants within her custody.

The injunction went into effect on January 30, 2019, after Dallas County sought and received two extensions of time to implement the injunction based on staffing shortages. *See* ECF No. 173 (order extending time to implement injunction to January 16, 2019); ECF No. 187 (order granting emergency motion to extend time to implement injunction to January 30, 2019).

C.    **The Appeal**

Dallas County appealed the Court's determination, made in reliance on *ODonnell*, that the County Judges made policy for Dallas County when setting bail or enacting a bail schedule pursuant to state law. And Plaintiffs appealed the Court's finding that the Eighth Amendment precluded the substantive due process relief they sought, including a requirement that a judicial officer setting bail make a finding that the release condition was necessary to meet a compelling government interest.

No party sought a stay of the injunction, although the parties immediately filed various motions for clarification—some joint or unopposed, some not—of certain aspects of the preliminary injunction order. *See* ECF No. 168 (joint motion by Plaintiffs and Dallas County Defendants); ECF No. 169 (motion by Plaintiffs); ECF No. 172 (motion by Dallas County); ECF No. 188 (motion by Misdemeanor Judges); ECF No. 195 (amended motion by Plaintiffs). These motions were in large part necessary because the Fifth Circuit's model injunction, based on a factual record pertaining to Harris County, did not cleanly fit the different pretrial system in Dallas County. *See* ECF No. 172, at 2 (discussing and comparing Harris County's central intake and booking procedures).

All motions for clarification were denied after a hearing on February 7, 2019, given the Court's opinion that it lacked jurisdiction to modify the preliminary injunction during the pendency of the appeal. *See* ECF No. 196.

While the appeal was pending, the parties engaged in discovery.[2] Almost all that discovery was directed to Dallas County, and effectively permitted Plaintiffs to "monitor" Dallas County's system through the protracted appeal. It consisted of extensive ESI review and production, production of text messages, and hundreds of gigabytes of videos dating back to January of 2017. Dallas County also produced the first three days of video of magistration hearings from every month, as well as monthly data spreadsheets listing all inmates detained in the jail, their charges, their bail amounts, their holds if any, and other similar data points.

---

[2] The County also produced, pursuant to the preliminary injunction, weekly reports with information regarding arrestees who were magistrated more than 48 hours after arrest. Plaintiffs never made a complaint regarding any of these arrestees, likely because virtually all persons appearing on these lists were arrested by outlying municipal police departments and could not have appeared before a Dallas County magistrate any sooner.

Despite the fact that Plaintiffs have received thousands of recordings of magistrations over the past three years, and abundant discovery regarding specific details about who was magistrated and when, Plaintiffs have raised no issues about the timing or adequacy of the initial bail hearings.

### D.      The *Sanchez* Lawsuit

In the interim, a different class of plaintiffs represented by the same counsel as the Plaintiffs in this case sued Dallas County and Sheriff Brown in April 2020 over the Jail's response to COVID-19. *See Sanchez v. Brown*, No. 3:20-cv-832-E, 2020 WL 2615931 (N.D. Tex. May 22, 2020). Although not directly related to this litigation, Judge Ada Brown's opinion denying Plaintiffs' application for a preliminary injunction made findings regarding the availability of habeas relief and the makeup of the jail population that are directly relevant to this Court's consideration of *Younger.*

In preparing her order denying Plaintiffs' application for preliminary injunction, Judge Brown reviewed confidential criminal history for the entire jail population. That review led her to observe that the "Dallas County Criminal District Attorney, the criminal defense attorneys representing accused individuals, and the Dallas County judges have collaborated well and worked diligently to drastically reduce the jail population since the eruption of the COVID-19 crisis." *Sanchez*, 2020 WL 2615931, at *11. For example, Judge Brown noted that:

> "Of the 4,829 inmates, approximately 4,105 of them are detained on felony offenses. This Court has reviewed, *in camera*, the National Crime Information Center records for each inmate remaining in the jail. With few exceptions, all inmates being held, whether on felony or misdemeanor charges, have prior convictions involving crimes of violence or prior convictions that may cause public safety concerns if the inmates were to be released.
>
> Fewer than 200 inmates are being held on misdemeanor charges. There are typically only 5 to 20 inmates charged with non-violent, non-DWI misdemeanor offenses at any time in the jail. Testimony during the hearing showed that there are *no* inmates being held in jail on Class C misdemeanors, such as traffic tickets."

*Id.* at *11 (emphasis in original).

Even more importantly for the purposes of this case, Judge Brown made factual findings regarding the availability of habeas relief and other opportunities to obtain pretrial release that were available to Dallas County detainees, even at the hectic onset of the pandemic. Specifically, Judge Brown noted evidence that bond hearings were being prioritized by the criminal courts. One of *Plaintiffs'* attorneys submitted a declaration "stating that even with the current COVID-19 situation, bond hearings are still given priority by the courts and are held as expeditiously as possible. Many are done informally or by phone." *Id.* at *13.

That declaration also confirmed that pre-trial and post-trial writs, and interlocutory appeals of criminal court decisions, proceeded apace. Plaintiffs' counsel also attached an email from the district courts stating that "The Criminal District Courts are currently open and conducting essential hearings, by any and all available means, at this time." *Id.* Given that Plaintiffs' own evidence showed that bond hearings were given priority, and that multiple avenues of appealing adverse decisions were available to Plaintiffs, Judge Brown concluded that Plaintiffs had not exhausted their state court remedies such that federal habeas would be available.

Plaintiffs did not appeal that decision. As of July 2021, Judge Brown has stayed that case pending a ruling on Defendants' pending motions to dismiss and for summary judgment.

### E.     The Panel Opinion and Rehearing.

On November 4, 2019, the Fifth Circuit panel heard oral argument in the pending appeal of the preliminary injunction. Thirteen months later, on December 28, 2020, the panel opinion issued. *See Daves v. Dallas Cnty.*, 984 F.3d 381 (5th Cir. 2020). The panel reversed the Court's holding regarding the Felony Judges as County policymakers, but—noting that its hands were tied

by *ODonnell*—affirmed as to the Misdemeanor Judges. The panel also affirmed the Court's finding regarding Plaintiffs' substantive due process claims.

Dallas County sought rehearing *en banc* to have the Fifth Circuit confirm that the Misdemeanor Judges did not make policy for Dallas County when acting as judges. Plaintiffs sought rehearing *en banc* of the panel's conclusion that they lacked standing to seek preliminary injunctive relief against the Felony Judges.

On February 25, 2021—a little over two years after the preliminary injunction went into effect—the Fifth Circuit granted Dallas County's petition for rehearing *en banc* and denied Plaintiffs' petition as moot. The Dallas County Defendants (joined by the Felony Judges) sought and received a stay of discovery[3] from this Court given the pending *en banc* rehearing.

On May 17, 2021, the oral argument panel requested that the parties be prepared to "comment during oral argument on the federal court abstention doctrine discussed particularly" in *Younger, O'Shea, Tarter v. Hury*, *Walker v. City of Calhoun, Ga.*, 901 F.3d 1245 (11th Cir. 2018), and *Wallace v. Kern*, 520 F.2d 400 (2d Cir 1975). The Fifth Circuit heard oral argument on May 26, 2021. With regard to *Younger*, the parties primarily disputed whether Plaintiffs had an opportunity to raise their constitutional challenge in state court. *See Daves*, 22 F.4th at 549 (Higginson, J. concurring) (summarizing oral argument).

Following oral argument, the *en banc* court took the matter under advisement. An opinion did not issue until January 7 of this year.

---

[3] Plaintiffs noticed depositions, including depositions of judicial officers, for the first time since the entry of the preliminary injunction, on February 16, 2021. Plaintiffs also served additional written discovery related to Faith in Texas's First Amendment claim for the first time ever in this litigation, in a transparent but belated effort to preserve it.

**F.      The New Bail Legislation.**

On August 31, 2021, the Texas legislature enacted Senate Bill 6 ("SB6"), amending several aspects of the Texas Code of Criminal Procedure regarding how bail is set in misdemeanor and felony cases.

As ultimately enacted, the bill represented many months of negotiation between legislators and stakeholders.[4] It codified many of the processes *ODonnell* identified as appropriate remedies for the constitutional violations alleged here. Dallas County did not challenge those processes on appeal, and SB6 in large part codified them. Incorporating procedural protections like those identified in *ODonnell* was a priority for the bill's authors, who intended the legislation to "follow all the constitutional principles, and the principles from rulings from the Fifth Circuit." *See Hearing on S.B. 21 Before the Sen. Jurisprudence Comm.*, 87th Tex. Leg. R.S. (Tex. 2021) (statement of Sen. Joan Huffman, Chair, Sen. Jurisprudence Comm.);[5] *see also Hearing on S.B. 6 before Select Comm. Constitutional Rights and Remedies*, 87th Tex. Leg. 2d C.S. (Tex. 2021) (statement of Rep. Reggie Smith) ("We worked hard to bring this bill in line with that ruling [*ODonnell*], which is to provide indigent defendants a proper and expedient process for declaring inability to pay money bail.").[6]

Texas law now requires that any arrestee charged with an offense punishable as a Class B misdemeanor or higher, and who is unable to pay a bail amount set by a judge, be provided with an opportunity to complete a financial affidavit. *See* Tex. Code Crim. Proc art. 17.028(h); *compare*

---

[4] https://www.texastribune.org/2021/08/27/texas-bail-legislature/

[5] SB 21 was the regular session's precursor bill to SB6. Video of this hearing is available at https://tlcsenate.granicus.com/MediaPlayer.php?view_id=49&clip_id=15494.

[6] Video of this hearing is available at https://tlchouse.granicus.com/MediaPlayer.php?view_id=46&clip_id=22300.

ECF No. 165, Preliminary Injunction, at ¶¶ 2-6 (providing for a financial affidavit). Texas law now also requires that any person completing an affidavit of inability to pay is entitled to a "prompt review . . . on the bail amount"; and the magistrate must make written findings if the bond amount is not lowered following that review. *See* Tex. Code Crim. Proc art. 17.028(h); *compare* ECF No. 165, Preliminary Injunction, at ¶ 8 (individualized hearing for defendants who execute financial affidavits, and written findings required if bail is not lowered). It also requires individual consideration of all Article 17.15 factors, and that the magistrate impose the "least restrictive conditions" that will "reasonably ensure the defendant's appearance in court as required and the safety of the community, law enforcement, and the victim of the alleged offense." *See* Tex. Code Crim. Proc art. 17.028(a), (b); *compare* ECF No. 165, Preliminary Injunction, at ¶ 8.

The new legislation also evidences the Texas legislature's intent to promote transparency and accountability in the bail-setting process. SB6 created a "public safety report system," developed and maintained by the Office of Court Administration of the Texas Judicial System, which will compile background information about defendants for use by magistrates at Article 17.15 bail hearings. Tex. Code Crim. Proc arts. 17.021, 17.022. It imposes qualification and training requirements upon magistrates who will conduct bail hearings. *Id.* arts. 17.023, 17.024, 17.0501. And it identifies certain offenses that will preclude an individual from being released on personal bond. *Id.* arts. 17.03(b-2), (b-3), 17.027.

With SB6, the Texas legislature made both substantive and procedural changes to Texas law governing how bail is set. In doing so, it sought to address what *ODonnell* identified as the "source of constitutional deficiency" for both the alleged due process and equal protection violations—"implent[ation] of the constitutionally necessary procedures to engage in a case-by-

10

case evaluation of a given arrestee's circumstances, taking into account the various factors required by Texas state law (only one of which is ability to pay)." 892 F.3d at 163.

But more importantly for this Court's analysis on remand, SB6 confirms that Plaintiffs' requested relief would require the Court to step into the shoes of the Texas legislature and graft additional, and possibly inconsistent, provisions onto this newly-enacted legislation. Plaintiffs insist that SB6 does not remedy the constitutional violations at issue because SB6 still does not require a "judicial finding—made after providing a robust adversarial hearing and other procedural protections—that [pretrial detention] is necessary to serve the government's interests in protecting public safety or assuring appearance at trial." *See* Plaintiffs' Supplemental Letter Brief on SB6, Case 18-11368, 10/14/21. The legislature could have written such a finding into Texas law, but it did not. Plaintiffs therefore will ask the Court to do what the Texas legislature declined to do, and order state court judges to make such a finding in particular cases or else release the defendant.

Plaintiffs' requested relief begs for *Younger*'s application. The Fifth Circuit understood as much and, in its en banc opinion, charged this Court with determining as court of "first view" whether abstention might be appropriate. *Daves*, 22 F.4th at 548.

### G.    The En Banc Opinion and Remand.

The Fifth Circuit's *en banc* decision made important clarifications that bind this court on remand. With regards to the proper parties, the court agreed with Dallas County that the Misdemeanor Judges were not proper parties, as they acted for the State of Texas, not Dallas County, when addressing bail. The court held similarly for the Felony Judges. The court made no determination regarding the Magistrates or the Sheriff.

The court also held that Plaintiffs lacked standing to sue the Felony and Misdemeanor Judges because what those judges did (enacting non-binding bail schedules) was too remote from

what caused Plaintiffs' injury (the allegedly routine application of the bail schedules without individualized consideration). The Felony and Misdemeanor Judges are therefore not proper parties to this suit. And because the preliminary injunction ran against the County only because the judges were identified as county policymakers, the injunction necessarily had to be vacated.

And finally, the Fifth Circuit provided an outline for "[p]otentially relevant" considerations to guide this Court's *Younger* analysis. The opinion took particular care to note the foundational equity and comity considerations underlying *Younger*:

> "The Supreme Court held that principles of equity and comity prohibited federal judicial interference with an ongoing state-court prosecution. . . . On equity, the Court adhered to 'the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.' On comity, 'an even more vital consideration,' the Court emphasized 'proper respect for state functions' and avoiding interference 'with the legitimate activities of the States.'"

*Daves*, 22 F.4th at 547 (quoting *Younger*, 401 U.S. at 43-44) (internal citations omitted).

Therefore, this Court has a clean slate unconstrained by *ODonnell* to give a "first view" to *Younger*'s application to this case and to reach "the result it considers appropriate even if it is inconsistent with any of this court's precedent." *Daves*, 22 F.4th at 548. But the Court need not reach any inconsistent conclusions, because, apart from *ODonnell*, both the Fifth Circuit's and the Supreme Court's precedent lead to the same result. *Younger* applies to the issues presented here.

## ARGUMENT AND AUTHORITIES

*Younger* recognized the "longstanding public policy against federal court interference with state court proceedings." 401 U.S. at 43. The doctrine acknowledges that the federal government's interest in "vindicat[ing] and protect[ing] federal rights and federal interests" must "endeavor[] to do so in ways that will not unduly interfere with the legitimate activities of the States.'" *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 601 (1975) (quoting *Younger*, 401 U.S. at 43-45).

These policy concerns are squarely implicated by Plaintiffs' suit. In fact, the entire bail reform project exists to circumvent the state legislature and the state courts to impose top-down monitoring of the state court system, by a federal courts and/or a federal-court-appointed monitor.

This kind of top-down monitoring currently exists in Harris County, because *ODonnell* found *Younger* inapplicable on the third prong. In *ODonnell*, the Fifth Circuit reasoned that relief in the form of "improvement of pretrial procedures and practice" could not be afforded by state courts. It also dismissed the policy concerns underlying *Younger*, reasoning that the requested injunction would "not require federal intrusion into pretrial decisions on a case-by-case basis." We now know better. The *ODonnell* consent decree proves that federal intrusion into state criminal proceedings is essential to Plaintiffs' requested relief. And with the passage of SB6, the Texas legislature provided additional procedural safeguards for defendants subjected to unaffordable bail, codifying much of *ODonnell*'s model injunction into Texas law.

This is a quintessential *Younger* case.

**A.      All of the *Middlesex* factors weigh in favor of abstention.**

A federal court applies a three-part test when considering whether to abstain under *Younger*: "(1) the federal proceeding would unduly interfere with an ongoing state judicial proceeding, (2) the state has an important interest in regulating the subject matter of the claim, and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Bice v. Louisiana Public Defender Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 45 (U.S. 423, 432 (1982)). Absent

"extraordinary circumstances,"[7] the district court is required to abstain when these factors are met. *See Daves*, 22 F.45h at 549 (Higginson, J. concurring) (citations omitted).

Plaintiffs' relief would unduly interfere with ongoing state judicial proceedings.

Plaintiffs have never disputed that their suit would unduly interfere with state judicial proceedings. *See* ECF No. 63 (disputing only the adequacy prong of *Middlesex*). The judicial act Plaintiffs attack—the setting of bail—occurs during ongoing criminal proceedings. And the relief Plaintiffs seek would, to say the least, interfere with those ongoing proceedings by rewriting Texas law to impose policies and practices that the Texas legislature opted against, and turning this Court into an auditor of the Dallas County pretrial system.

### 1.    Each class plaintiff is subject to ongoing judicial proceedings.

Each of the six Plaintiffs in this case was brought to the Dallas County Jail, and each appeared before a Dallas County Magistrate for a determination of probable cause and to have bail set. *See* ECF No. 10 at ¶ 28 (Daves); ¶ 30 (Walston); ¶ 33 (Banks); ¶ 35 (Tovar); ¶ 37 (Michieka); ¶ 39 (Thompson). At that point if not earlier, each Plaintiff was subject to ongoing state proceedings. *See Kirby v. Illinois*, 406 U.S. 682, 689 ("the initiation of adversary judicial criminal proceedings" can occur at or after various occurrences, including "arraignment"); *Bice*, 677 F.3d

---

[7] There are three exceptions that would bar *Younger*'s application even if each of the three *Middlesex* prongs are met:

> "(1) the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff, (2) the state statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it,' or (3) application of the doctrine was waived."

*Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 518 (5th Cir. 2004) (quoting *Younger*, 401 U.S. at 49).

Plaintiffs do not allege that their criminal prosecutions were brought in bad faith or for the purposes of harassment. Nor have they alleged that the challenged bail policies are so profoundly violative of explicit constitutional guarantees that *Younger* could be avoided (the many years of litigation in both *ODonnell* and this case, resulting in lengthy preliminary injunction orders, multiple appeals, and the recent *en banc* review, indicate that is far from obvious that Plaintiffs' suit implicates a "patently" unconstitutional practice). Finally, the Fifth Circuit has already held that *Younger*'s application was not waived. *Daves*, 22 F.4th at 547. None of the "extraordinary circumstances" that might justify declining to apply *Younger* are present here.

14

at 717 ("The ongoing state proceeding here is Bice's criminal prosecution in municipal court.");
*Wallace v. Kern*, 520 F.2d 400, 401 (2d Cir. 1975) (ongoing state proceedings for inmates "awaiting trial"); *compare Agriesti v. MGM Grand Hotels, Inc.*, 53 F.3d 1000, 1002 (9th Cir. 2002) (*Younger* did not apply to bar claims of federal court plaintiffs who were arrested and therefore subject to "executive" action, but were never taken before a judge).

2.  **Plaintiffs' requested relief would interfere with those proceedings.**

Second, a ruling in Plaintiffs' favor would interfere with these ongoing state judicial proceedings, and the proceedings for thousands of other individuals who are part of the class.

To determine whether the federal proceeding would interfere with the state proceeding, the court "look[s] to the relief requested and the effect it would have on the state proceedings." *Bice*, 677 F.3d at 717 (citations omitted). "Interference is established whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly." *Id.* (citing *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002) (quotations omitted). If the relief implicates "the kind of interference that *Younger v. Harris* and related cases sought to prevent," this prong is satisfied. *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974). *Younger* applies "not only to suits for injunctive relief, as in *Younger* itself, but also extends to suits for declaratory relief. *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 86 (5th Cir. 1992) (citing *Samuels v. Mackell*, 401 U.S. 66, 72 (1971)).

Direct interference with how state judicial proceedings are conducted is the intended consequence of Plaintiffs' suit. If they prevail, Plaintiffs will obtain a federal court order that would require a state court judge to do or not do certain things while performing the act of setting bail pursuant to state law. If Plaintiffs prevailed, this Court would order the Dallas County Magistrates to engage in "consideration" of non-financial alternatives; to make certain judicial findings,

including that the bail amount or release condition is "necessary to meet a compelling governmental interest;" and to make an "inquiry" and "findings" regarding an arrestee's financial situation. *See* ECF No. 10, at 61. These potential orders directly target how and what happens at a state judicial proceeding. Worse, they ask this Court to tell state court judges how and what to do.

This Court should be "practical in assessing the most likely result of granting plaintiff's requested relief." *Bice*, 677 F.3d at 717. It is reasonable to expect that, if Plaintiffs' requested injunction were entered, this Court would be presented with instances where a state court judge did something the Plaintiffs believed was out of comportment with that injunction. The Court would then find itself in the position of potentially holding state court judges in contempt for their judicial decisions, or ordering the Dallas County Sheriff to release a person held in jail following a hearing that did not comply with the injunction. *See O'Shea v. Littleton*, 414 U.S. 488, 501-02 (1974) (injunction "would necessarily impose continuing obligations of compliance" and possible contempt claims to be adjudicated by the federal court). The Court would, in effect, become a court of review for the Dallas County criminal courts.[8] This is exactly what *Younger* prohibits. *See Daves*, 22 F.4th at 547; *Wallace*, 520 F.2d at 405 ("[U]nder the principle known as comity a federal district court has no power to intervene in the internal procedures of the state courts.") (citation omitted). !

*O'Shea* warned against this kind of "ongoing federal audit of state criminal proceedings" almost fifty years ago. 414 U.S. 488, 500 (1974). As is the case here, the injunction in *O'Shea* was

---

[8] Plaintiffs may try to minimize the effect of their requested relief by arguing that all they really want is for this Court to ensure that state court magistrates do what is already required by Texas law. *See* Tex. Code Crim. Proc. art. 15.17. But that argument misses the mark in two respects. First, this Court has no authority to enter a follow-the-law injunction. *See, e.g. Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 103-23 (the Eleventh Amendment prohibits federal courts from enjoining state facilities to follow state law). And second, that argument would simply confirm that this case has been mooted by the Texas legislature's enactment of laws that in large part codified *ODonnell*'s model injunction.

not targeted at a specific state statute, or a specific criminal prosecution. Instead, the *O'Shea* plaintiffs sought an injunction "aimed at controlling or preventing the occurrence of specific events that might take place in the course of future criminal trials." *Id.* Plaintiffs, like the Seventh Circuit in *O'Shea*, would "disclaim[] any intention of requiring the District Court to sit in constant day-to-day supervision" of Dallas County's judges in pursuing their injunction. *Id.* But just as in *O'Shea*, any injunction that could be ordered here would subject each Dallas County judicial officer and their agents to the continuing supervision of this Court, with the possibility of a challenge in this Court by a state defendant who believes this Court's bail procedures were not followed and the possibility of contempt.

In *O'Shea*, the mere possibility that a state court judge would be summoned into federal court to answer for their non-compliance with a federal injunction was a key factor justifying abstention. 414 U.S. at 501-02; *see also Tarter*, 646 F.2d at 1013 ("The enforcement of any remedial order granting the relief requested would require federal courts to interrupt state proceedings to adjudicate allegations of asserted non-compliance with the order."). Not only would such a system be completely unworkable for any practical purpose, but it would also be in "sharp conflict" with the principles of equitable restraint the Supreme Court has articulated over the past four and a half decades. *Id.* at 502. But Plaintiffs ask the Court to impose just such a system. They would have the Court enter declaratory and injunctive relief requiring specific conduct from state court judicial officers at the many thousands of bail-settings that take place in any given year and they would ask the Court to monitor that system for the foreseeable future.[9]

---

[9] Plaintiffs asked Judge Brown to enter a similar order in the *Sanchez* litigation. She declined, in part due to her concerns about an injunction creating a "Mother, May I" system that would "direct—or at a minimum, strongly influence" the discretionary decisions of state officials. *Sanchez*, 2020 WL 2516931, at *18.

**B.      The dispute implicates important state interests.**

This *Middlesex* prong has never been seriously disputed, nor could it be. The state certainly has "a compelling interest in assuring the presence at trial of persons charged with a crime." *Pugh v Rainwater*, 572 F.2d 1053, 1056 (5th Cir. 1978) (en banc); *see also Wallace v. Kern*, 520 F.2d 400, 406 (2d Cir. 1975 (the state has "a most profound interest" in bail proceedings).  A suit seeking to change the way bail is set by having a federal court dictate what findings must be made, what information must be considered by the magistrate, and what outcomes may be reached in particular cases, directly implicates this state interest.

**C.      State proceedings provide an opportunity to raise constitutional challenges.**

Plaintiffs bear the burden on the third *Middlesex* prong of showing "'that state procedural law barred presentation of [their] claims.'" *See Daves*, 22 F.4th at 549 (citations omitted) (Higginson, J. concurring). Plaintiffs have made no effort to carry this burden, and cannot do so now.

**1.      Plaintiffs forewent multiple opportunities to raise their challenge in state court.**

For this prong of *Younger*, "the only pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims." *Moore v. Sims*, 442 U.S. 415, 430 (1979). The opportunity only needs to be available, and the mere fact that Plaintiffs did not "avail themselves of such opportunities does not mean that the state procedures were inadequate." *Id.* at n. 12.

Plaintiffs' fundamental complaint is that their bonds were set at an unaffordable amount, resulting in their unconstitutional detention. *See* ECF No. 10, at 25-34 (discussing an alleged system of "wealth-based detention"). Numerous opportunities to challenge either the amount of bail or pretrial detention exist under Texas law.

With regards to the amount of bail, any arrestee who completes a financial affidavit is entitled to a prompt review, by a magistrate, of the bail amount pursuant to Texas law. *See* Tex. Code Crim. Proc. art. 17.028(h). An arrestee could also move for a bond reduction. *See Stack v. Boyle*, 341 U.S. 1, 6 (1951) ("[T]he proper procedure for challenging bail as unlawfully fixed is by motion for reduction of bail and appeal to the Court of Appeals from an order."). Or, for defendants who qualify for a personal bond under Article 17.03, they may apply for a personal bond from the presiding judge. Tex. Code Crim. Proc. art. 17.03.

A defendant who believes they are unconstitutionally detained may also challenge their detention by filing a petition for a writ of habeas corpus. *See* Tex. Code Crim. Proc. art. 11.01. Although *ODonnell* declined to consider the question, Texas law undisputedly provides the opportunity to challenge one's pretrial detention on an unaffordable bail amount via a writ of pretrial habeas. *See Ex Parte Keller*, 595 S.W.2 531, 532-33 (Tex. Crim. App. 1980). A hearing on a habeas application can involve the presentation of evidence pertaining to relevant factors (including testimony from the defendant), as the defendant sees fit to present in carrying their burden to show their entitlement to a bail reduction. *Id.* And, as *Keller* demonstrates, a defendant can appeal an unfavorable decision on their application to the highest state criminal appellate court.

The availability of these state court procedures not only shows that an opportunity exists to challenge any alleged deficiencies in the bail-setting process, but also that Plaintiffs' injury— pretrial detention pursuant to an allegedly unconstitutional bail process—is far from irreparable. *See Younger*, 401 U.S. at 43-44 (abstention appropriate "when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."). The court's findings in the *Sanchez* litigation are further evidence that, even at the very outset of COVID-19,

remedies for individuals seeking expeditious release from pretrial confinement were available and were being exercised. *See Sanchez*, 2020 WL 2615931, at *11-13.

### 2. *Gerstein* supports abstention, not further federal intrusion into the state pretrial process.

Plaintiffs may argue that what they seek is simply additional "nondiscretionary procedural safeguards" of the kind that *Tarter* and *Gerstein* considered—in other words, relief not directed "at state prosecutions as such", but at the "legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution." *Gerstein*, 420 U.S. at 108, n. 9. But *Gerstein* does not help Plaintiffs. First, the relief requested here is far from a "nondiscretionary procedural safeguard." *See* ECF No. 10 at 61; ECF No. 4-3. And second, in the restrained approach *Gerstein* took and the deference it showed to the state to determine the specifics of how basic constitutional guarantees should be provided, *Gerstein* actually counsels in favor of abstention here.

### a) The requested relief implicates *Younger*.

Treating Plaintiffs' requested relief as seeking only a "nondiscretionary procedural safeguard" *a la Gerstein* or *Tarter* is a category error. Taking their complaint at face value,[10] Plaintiffs want this Court to rewrite the just-rewritten state laws governing what factors must be considered, how those factors are weighed, and what findings must be made when a state court judge sets bail in a state criminal proceeding. *See* ECF No. 10 at 61.

The Court must be "practical in assessing the most likely result of granting plaintiff's requested relief." *Bice*, 677 F.3d at 717. As *O'Shea* and *Tarter* both indicated, the most likely

---

[10] The relief Plaintiffs requested this Court enter at the preliminary injunction hearing, of course, went far beyond simply an order requiring a particular judicial finding. Plaintiffs still seek "any other order and judgment this Court deems necessary" to enjoin Defendants from operating the allegedly unconstitutional system. ECF No. 10 at 61.

result of entering this relief is: (1) state court judges will be constrained to prioritize the ability to pay as the predominant factor (despite state law expressly forbidding affording undue weight to that factor) because (2) hanging over their heads will be the possibility of being summoned into federal court to answer potential contempt charges when any state court criminal defendant is of the opinion that the judge made an erroneous finding.

What's more, because the class plaintiffs are all pretrial defendants, it is inevitable that attempts to enforce alleged violations of the injunction would be levied during the pendency of the defendant's criminal proceeding—all but guaranteeing that the interference would be "directed at the state prosecutions as such." *Gerstein*, 420 U.S. at 108 n. 9. A federal injunction that state clerks must docket pro se motions (an injunction the *Tarter* court did not actually condone under the facts of that case)[11] is much different than the injunction contemplated here, which would involve this court telling a state court judge to make a particular finding, a particular "inquiry," and particular "considerations." No federal case—including the various circuit cases cited in the *Daves* dissent—has enjoined state judicial officers to perform certain functions at a hearing, including making particular findings. The most the Supreme Court permits, under *Gerstein*, is an injunction directed at making sure a particular constitutionally required procedural step—like a probable cause hearing—happens before trial. But even *Gerstein* acknowledged that the particulars of that hearing are appropriately determined by the state, not a federal court.

b)      ***Gerstein* counsels restraint, not overreach.**

*Gerstein* does not support the conclusion that the relief Plaintiffs' request here is appropriate for a federal court to order. In that case, the Supreme Court did not abstain from

---

[11] *See also Whole Woman's Health v. Jackson*, 142 S.Ct. 522, 532-534 (2021) (state court clerks and judges immune from action under § 1983 seeking injunctive relief).

holding that the Fourth Amendment required a timely probable cause determination before trial. 420 U.S. at 126. But the Court specifically *declined* to dictate the content and substance of what must occur at such a probable cause hearing, how the hearing should be conducted, or even specifically when the hearing must occur, because the Court recognized that such specifics were better addressed by the state. 420 U.S. at 124 ("There is no single preferred pretrial procedure, and the nature of the probable cause determination usually will be shaped to accord with a State's pretrial procedure viewed as a whole."). *Gerstein* even acknowledged that the particulars of a constitutional process might look different from state to state—"we recognize the desirability of flexibility and experimentation by the States." *Id.* at 123-24. Far from disregarding the equity and comity concerns underlying *Younger*, *Gerstein* acknowledged and gave significant weight to those considerations.

*Gerstein*'s restrained holding and deference to state procedures is especially significant here because during the pendency of this litigation, the Texas legislature revised the exact bail procedures Plaintiffs challenge. Plaintiffs' claimed injury—bail being set at an unaffordable level—can be reviewed and remedied immediately under state law. *See* Tex. Code Crim. Proc. art. 17.028(h). Under Texas law, any magistrate declining to lower the bail amount after such a review must make written findings explaining why. *Id.* And any failure to provide such a review must be reported to the Office of Court Administration of the Texas Judicial System. *Id.*, 17.028(i).

*Gerstein* is distinguishable for another reason. The opinion emphasized at the outset that Florida law precluded state court defendants held under an information from instituting habeas corpus proceedings to test probable cause for their detention "except perhaps in exceptional circumstances." 420 U.S. at 106. The only other available state remedy was a preliminary hearing which could take place only after 30 days, or after arraignment which often was delayed a month

or more after arrest. *Id.* The result was that a person could be held for 30 days or more solely on a prosecutor's decision. *Id.*

The facts and law here are different. Nothing in Texas law prohibits Plaintiffs from seeking habeas relief if they were detained subject to an unaffordable bail amount (and this was true even prior to SB6). *See* Tex. Code Crim. Proc. art. 11.01; Tex. Code Crim. Proc. art. 11.24;[12] *Martin v. Dallas Cnty., Tex.*, 822 F.2d 553, 555 (5th Cir. 1987) ("Texas law afforded Martin adequate remedies against his illegal detention both while it was underway and for post deprivation compensatory relief. Martin could have sought habeas corpus relief pursuant to Tex. Code Crim. Proc. Ann. art. 11.01 or tort recovery for false imprisonment."); *see also Moore v. Sims*, 442 U.S. 415, 425-26 (abstention is appropriate "unless state law clearly bars the interposition of the constitutional claims."). Adequate remedies at law exist here that did not in *Gerstein*.

### c)      A "pattern or practice" challenge implicates *O'Shea*, not *Gerstein*.

Plaintiffs may argue that *Gerstein*'s broader holding applies by reframing their requested injunction as simply imposing a procedural safeguard onto a systemic policy that results in the unconstitutional setting of bond in a number of cases. But if that were the case, *O'Shea*'s direct application of *Younger* is much more pertinent than *Gerstein's* passing reference to *Younger* in a footnote. *O'Shea* found abstention appropriate when, very much as in this case, a class of plaintiffs challenged a county's "pattern and practice" of "set[ting] bond in criminal cases according to an unofficial bond schedule without regard to the facts of a case or circumstances of an individual defendant in violation of the Eighth and Fourteenth Amendments." *Id.* at 492.

---

[12] "When a person has been committed to custody for failing to enter into bond, he is entitled to the writ of habeas corpus, if it be stated in the petition that there was no sufficient cause for requiring bail, or that the bail required is excessive. If the proof sustains the petition, it will entitle the party to be discharged, or have the bail reduced."

And in *Tarter v. Hury*, the Fifth Circuit relied on *O'Shea* and applied *Younger* to a proposed class action complaint seeking systemic injunctive relief in the form of (1) an injunction against excessive bail, and (2) an injunction requiring clerks to docket, and judges to hear, pro se motions. The court held that *O'Shea* and *Younger* required abstention as to the first claim, but not the second. The nature of the judicial bail decision was key to finding abstention appropriate for that claim: "Because the amount of bail prescribed for each criminal defendant depends on the peculiar facts and circumstances of his case, the setting of bail requires ad hoc decisions committed to the discretion of judges." 646 F.2d at 1013. *Tarter* indicated that a different injunction, requiring pro se motions to be docketed and considered, might be appropriate. But *Tarter* is not support for an injunction that would tell a judge what to do at any hearing on such a motion. It in fact indicates precisely the opposite—that an injunction like this one, directed at "ad hoc decisions committed to the discretion of judges," requires abstention. *Id.*

*Gerstein* properly recognized the specifics of pretrial criminal processes as solidly within the State's exclusive province. By attempting to dictate what a state court judge must do, Plaintiffs go too far. *Gerstein* does not help them here.

### D.   Challenges to bail procedures are consistently candidates for abstention.

Courts confronted with injunctions dictating state bail procedures have consistently abstained under *Younger*, including the Fifth Circuit in *Tarter v. Hury*, discussed above. These cases including *O'Shea*, *Wallace v. Kern*, and several factually similar district court cases discussed in the Misdemeanor Judges' Motion to Dismiss and incorporated here. *See* ECF No. 33 at 12-15.

The *Daves* dissent did cite several circuit court cases that "correctly held that abstention is inappropriate in the pretrial detention context in light of *Gerstein*." *Daves*, 22 F.4th at 569. These

24

cases support no such sweepingly broad principle, nor would *Gerstein* support such a holding (it in fact specifically disclaimed it, as discussed above). Those cases are discussed and distinguished below.

### 1.    Wallace v. Kern

The Second Circuit applied *Younger* in perhaps the most factually similar of any case to date. In *Wallace*, a class of indigent pretrial detainees argued that their incarceration violated the equal protection and due process clauses of the Fourteenth Amendment. *Wallace*, 520 F.2d at 401. As a remedy, they demanded injunctive relief requiring an evidentiary hearing with 72 hours after arraignment and written findings by the state court judge explaining the bail decision. *Id.*

The Second Circuit abstained despite a record reflecting significantly weaker processes than what exist in Dallas County. Under the challenged New York practices, a bail review typically could not be requested until "several weeks after arraignment." *Id.* at 402. "A few weeks thereafter," the case would be assigned to a presiding court and "further bail review applications" could then be made. *Id.* Finally, bail review could be requested in a "special bail review section" of the state trial court, and—failing any relief there—an application could be made for a writ of habeas corpus. *Id.*

The federal district court entered an injunction requiring the requested 72-hour evidentiary hearing and written findings explaining the reason for denying or fixing bail. *Id.* at 403. The Second Circuit reversed. In "proceeding to legislate and engraft new procedures upon existing state criminal practices," the district court engaged in the "intrusive violation of the principles of comity and federalism as defined by the Supreme Court in *Younger." Id.* at 404. Key to this decision was the fact that New York law provided for an immediate application for a writ of habeas corpus (unlike *Gerstein*, but like article 11.24 of the Texas Code of Criminal Procedure), and

numerous opportunities for reviews of the bail decision. The availability and adequacy of these state court remedies indicated no "irreparable harm" that would justify an injunction. *Id.* at 407. By "direct[ing] its own procedures for state hearings in considerable detail," the district court ran afoul of *O'Shea* and *Younger*. *Id.* at 408.

The similarities to this case are obvious. The requested injunction in *Wallace* sought a specific hearing at a specific time, and (like this case) sought to dictate what must be considered and what findings must be made at such a hearing. Like this case, state law provided opportunities to redress the alleged injury. Even if binding Supreme Court precedent in *O'Shea* or Fifth Circuit precedent in *Tarter* were not more than enough, *Wallace*'s close similarity to this case provides even more support for abstention.

### 2.    Walker v. City of Calhoun, GA

More recently, the Eleventh Circuit reached what at first appears to be a different conclusion. But on closer review, *Walker* is entirely consistent with *Gerstein*, *O'Shea*, and the Fifth Circuit's precedent and is of no help to Plaintiffs here.

*Walker* involved similar allegations (the proposed class was represented by some of the same counsel as the class here), but a different request for relief. 901 F.3d 1245, 1252-53. Before the Eleventh Circuit was an injunction ordering an "affidavit-based process" for an early bail decision. An arrestee who indicated their inability to pay a secured or money bail would have to be provided an opportunity to complete a financial affidavit "as soon as practicable after booking," with evaluation of that affidavit within twenty-four hours of arrest and the prompt release on unsecured bond of anyone found indigent after such evaluation. *Id.* at 1253. Walker, the named plaintiff, had himself been detained for eleven days without a bail hearing because the

municipality's policy provided bail hearings only on non-holiday Mondays and the Monday after his arrest was Labor Day. *Id.* at 1252.

At the outset, the court noted that the plaintiff "merely seeks prompt bail determinations for himself and his fellow class members." 901 F.3d 1245, 1254 (2018). Citing *Gerstein*'s footnote nine, the Eleventh Circuit panel held that *Younger* did "not readily apply" to such a claim. *Id.* Turning then to consideration of whether the requested relief would "entail intrusive federal court interference with State prosecutions generally," the Eleventh Circuit held that it would not. *Id.* at 1255. An injunction ordering "a prompt pretrial determination of a distinct issue" more closely resembled *Gerstein* than *O'Shea*, in their view. *Id.*

This holding does not counsel against abstention here. Plaintiffs want more than just a prompt pretrial bail hearing. Texas law already provides for that (and did before Plaintiffs ever filed suit). Plaintiffs here have advanced several steps further—they want an injunction specifically controlling what happens at a bail hearing, including what inquiries, considerations, and findings must be made. Even if *Gerstein* indicates that the kind of relief afforded in *Walker* might be appropriate, both *Gerstein*'s limited holding and *O'Shea*'s more applicable holding show that what Plaintiffs seek in *this* case implicates *Younger*.

*Walker* can also be easily distinguished on its materially different facts indicating availability of state remedies. In *Walker*, arrestees could get a bail hearing only on Mondays—and even then, only if that Monday were not a holiday. 901 F.3d at 1252. But bail hearings in Dallas County happen twenty-four hours a day, seven days a week, and under state law must happen for an individual defendant no later than forty-eight hours after arrest. *See* Tex. Code Crim. Proc. art. 17.028(a). The availability, and adequacy, of a state court opportunity to obtain pretrial release is very different in *Walker* than here.

### 3.   Other relevant authority.

In addition to *Walker*, the *Daves* dissent referenced *Fernandez v. Trias Monge*, 586 F.2d 848, 851-54 (1st Cir. 1978); *Stewart v. Abraham*, 275 F.3d 220, 225-26 (3d Cir. 2001); *Arevalo v. Hennessy*, 882 F.3d 763, 766 (9th Cir. 2018); and *Campbell v. McGruder*, 580 F.2d 521, 525-26 & n.6 (D.C. Cir. 1978). These cases do not support an injunction in this case.

For example, *Fernandez* involved a juvenile plaintiff held "for several months prior to trial" without receiving a bail hearing or a probable cause hearing. 584 F.2d at 850. This was possible because Puerto Rican law at the time permitted a juvenile's detention based on "good cause," which determination could be made "based solely on a social worker's or juvenile probation officer's investigatory report" without any notice or hearing. *Id.* The First Circuit very appropriately found that this untenable state of affairs did not require abstention under *Younger*. But the court's analysis is illuminating given the rigorous examination it applied even to these (dramatically different) facts. The court noted the plaintiff's efforts to request state court hearings, going so far as to unsuccessfully appeal to the Supreme Court of Puerto Rico. *Id.* at 853. The court also devoted substantial analysis to determining whether the federal constitutional claim had actually been litigated by Puerto Rico's courts—if it had, collateral estoppel would have applied. *Id.* at 854-57. In any event, the injury and requested relief are entirely dissimilar from what is alleged or requested here. It is hardly support for a general principle that "abstention is inappropriate" as a rule in the "pretrial detention context."

In *Arevalo v. Hennessy*, the state court defendant challenged his allegedly excessive $1.5 million bail amount first at a bail hearing before the trial court, then by writ of habeas corpus to the California Court of Appeal, then by writ of habeas corpus to the California Supreme Court, then to the federal district court. 882 F.3d at 765. The district court *sua sponte* raised *Younger*, and

abstained even though the State acknowledged it had waived *Younger* and agreed that Arevalo had

not received constitutionally adequate due process. The Ninth Circuit found *Younger* did not apply

because (1) the plaintiff's entitlement to a non-excessive bail could be decided while his criminal

prosecution proceeded; (2) he had suffered irreparable harm due to his six months of detention

without a constitutionally adequate bail hearing, and (3) he had exhausted his state court remedies.

*Id.* at 767. *Arevalo*'s unique posture (featuring parties who were aligned on the merits) and

significantly different facts make it only marginally helpful here, and, again, is scant support for a

principle of general abstention in the pretrial detention context.

      *Stewart v. Abraham* was not a bail case. Like *Gerstein*, *Stewart* involved a Fourth

Amendment challenge to pretrial detention without a judicial determination of probable cause. 275

F.3d at 224. Following *Gerstein*, the Third Circuit found the exercise of federal jurisdiction

appropriate since, like *Gerstein*, the challenge was to pretrial restraint based on executive action

alone, without any judicial hearing or determination. *Id.* at 226. As explained above, what Plaintiffs

allege and seek as relief here is quite different.

      Finally, *Campbell v. McGruder* was not a bail case either. 580 F.2d at 525. Instead, it was

a jail overcrowding case with minimal relation to the facts and relief sought here. The injunction

challenged on appeal prescribed specific space requirements for detainees, set limits on the total

number of inmates that could be housed, and established procedures for reducing the jail

population when those limits were exceeded. *Id.* at 525-26. The D.C. Circuit cited *Younger* only

once, noting that *Younger*'s prohibition on injunctions directed at ongoing state proceedings did

not apply because no ongoing proceeding or pending litigation was at issue. *Id.* at 526.

**E.     There is no proper party for Plaintiffs' requested injunctive relief.**

The Felony Judges control the Magistrates, as this Court found. *Daves*, 22 F.4th at 541. The Fifth Circuit confirmed that the Magistrates are judicial officers (although it did not determine whether they were county or state officials). *Id.* As "surrogates" who are controlled by the Felony Judges, the Magistrates should be dismissed for the same reasons. *See Madrid v. State*, 751 S.W.2d 226, 229 (Tex. App.—El Paso 1988, pet. ref'd).

And with regards to standing against the Magistrates, the Fifth Circuit observed that injunctive relief against the magistrates could only ensue if "a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. The Fifth Circuit left it to this Court to determine "[h]ow, if at all, that limitation affects that analysis of abstention" on remand. *Daves*, 22 F.4th at 545. If this Court determines *Younger* applies to Plaintiffs' request for injunctive relief, it must abstain from the requested declaratory relief against the Magistrates as well. The Supreme Court has extended *Younger* to actions for declaratory judgments, not just injunctions. *Samuels v. Mackell*, 401 U.S. 66, 72 (1971) ("[W]here an injunction would be impermissible under [comity and equity], declaratory relief should ordinarily be denied as well."). The Magistrates should be dismissed.

Finally, Plaintiffs do not allege the Dallas County Sheriff sets bail, or even has a role to play in the bail-setting process beyond holding the keys to the jail. The Sheriff does not make judicial findings and does not conduct bail-setting hearings. The Fifth Circuit was very clear that Plaintiffs' injury—mechanical application of a bail schedule—arose out of a judicial act. *See Daves*, 22 F.4th at 543 ("[A] the district court found, the claimed injury derives from the Magistrate Judges' 'policy of routinely relying on the schedules.'").

For the reasons set out in the Sheriff's Motion to Dismiss, the Sheriff is simply not a proper party for an injunction directed at how judicial officers set bail. In the absence of any judicial defendants, the Sheriff would nonsensically be the sole alleged policymaker for a case attacking judicial functions. The Sheriff should also be dismissed.

## CONCLUSION

The Fifth Circuit tasked this Court with making findings and conclusions regarding possible abstention and the effect of new legislation. For the reasons explained in this brief, the Dallas County Defendants urge the Court to enter an appropriate order granting the pending motions to dismiss filed by Dallas County (ECF No. 28), the Dallas County Sheriff (ECF No. 29), and the Dallas County Magistrates (ECF No. 30).


Date: March 1, 2022                           Respectfully submitted,


                                              HUSCH BLACKWELL LLP

                                              By: */s/ Kate David*
                                              Kate David
                                              State Bar No. 2403670
                                              Kate.David@huschblackwell.com
                                              Ben Stephens
                                              State Bar No. 24098472
                                              Ben.Stephens@HuschBlackwell.com
                                              600 Travis Street, Suite 2350
                                              Houston, Texas 77002
                                              (713) 647-6800 – main telephone
                                              (713) 647-6884 – general facsimile

                                              ATTORNEYS FOR DALLAS COUNTY, TEXAS,
                                              SHERIFF MARIAN BROWN, MISDEMEANOR
                                              JUDGES, AND MAGISTRATE JUDGES

31

## CERTIFICATE OF SERVICE

I certify that a copy of this motion has been served upon all counsel of record who have registered with the ECF system of the Court, through that ECF system, on the 1st day of March 2022.

By: */s/ Ben Stephens*
Ben Stephens